## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MJ'S MARKET, INC., <br><br> Plaintiff, <br><br> v. <br><br> JUSHI HOLDINGS, INC., JUSHI MA, INC., JUSHI, INC., SAMMARTINO INVESTMENTS LLC, NATURE'S REMEDY OF MASSACHUSETTS, INC., WWF LLC, MCMANN LLC, VALIANT ENTERPRISES, LLC, JOHN BRADY, ROBERT CARR, JR., and JUSTIN LUNDBERG, <br><br> Defendants. | Civil Action No. 4:23-cv-40037-DHH |

### DEFENDANTS SAMMARTINO INVESTMENTS LLC, WWF LLC, JOHN BRADY, ROBERT CARR, JR., AND JUSTIN LUNDBERG'S MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S COMPLAINT

## **TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................................................................... i

TABLE OF AUTHORITIES ....................................................................................................... ii

INTRODUCTION ........................................................................................................................ 1

FACTUAL BACKGROUND ....................................................................................................... 1

      A.    The Zoning Bylaw. ...................................................................................... 1

      B.    The Town's Consideration of Marijuana Retailers ........................................ 3

      C.    The Merger Agreement ................................................................................. 5

      D.    MJ's Special Permit and Variance Applications. ........................................... 6

      E.    The Zoning Appeal. ...................................................................................... 8

ARGUMENT ............................................................................................................................. 11

      A.    The Sammartino Defendants' Petitioning Activity Is Immunized Under the *Noerr-Pennington* Doctrine. ......................................................... 11

      B.    MJ's Does Not Allege Facts Sufficient to Demonstrate that the "Sham" Exception to the *Noerr-Pennington* Doctrine Applies. .................... 12

      C.    The *Noerr-Pennington* Doctrine Bars MJ's State Law Claims. ................... 16

      D.    MJ's Failure to Plausibly Plead that the Sammartino Defendants Caused It Any Injury Is Fatal to Its Claims. ................................................. 17

      E.    The Complaint Fails to State Claims Against Brady, Carr, and Lundberg. .................................................................................................... 19

CONCLUSION .......................................................................................................................... 20

## TABLE OF AUTHORITIES

**Cases**

*Amphastar Pharms. Inc. v. Momenta Pharms., Inc.*, 850 F.3d 52 (1st Cir. 2017) ........................ 9

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) ...................................................................................... 10

*Aulson v. Blanchard,* 83 F.3d 1 (1st Cir. 1996) ......................................................................... 10

*Aurora Cable Commc'ns, Inc. v. Jones Intercable, Inc.*,
720 F. Supp. 600 (W.D. Mich. 1989) ..................................................................................... 17

*Bayou Fleet, Inc. v. Alexander*, 26 F. Supp. 2d 894 (E.D. La. 1998) .......................................... 17

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007) ................................................................. 10, 18

*Brown v. Donco Enters., Inc.*, 783 F.2d 644 (6th Cir. 1986) ....................................................... 19

*Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.*, 429 U.S. 477 (1977) .......................................... 17

*C.R. Bard, Inc. v. Med. Elecs. Corp.*, 529 F. Supp. 1382 (D. Mass. 1982) .................................. 16

*Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508 (1972) .......................................... 11

*Cape Cod Food Prod. v. Nat'l Cranberry Ass'n*, 119 F. Supp. 900 (D. Mass. 1954) .................... 19

*Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101 (7th Cir. 1984) ......................................... 10

*Columbia v. Omni Outdoor Advert., Inc.*, 499 U.S. 365 (1991) .................................................. 13

*Cove Road Dev. v. Western Cranston Indus. Park Assoc.*, 674 A.2d 1234 (R.I. 1996) .............. 17

*Davric Maine Corp. v. Rancourt*, 216 F.3d 143 (1st Cir. 2000) ............................................. 11, 15

*Eastern R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961) .............. 11, 12

*Fed. Trade Comm'n v. Shkreli*, 581 F. Supp. 3d 579 (S.D.N.Y. 2022) ....................................... 19

*Freeman v. Town of Hudson*, 714 F.3d 29 (1st Cir. 2013) .......................................................... 10

*G.S. Enterprises, Inc. v. Falmouth Marine, Inc.*, 410 Mass. 262 (1991) ...................................... 18

*García–Catalán v. United States,* 734 F.3d 100 (1st Cir. 2013) ............................................. 9, 10

*Hewlett-Packard Co. v. Boston Sci. Corp.*, 77 F. Supp. 2d 189 (D. Mass. 1999) ....................... 17

*IGEN Int'l, Inc. v. Roche Diagnostics GmbH*, 335 F.3d 303 (4th Cir. 2003) .............................. 13

*In re Carbon Black Antitrust Litig.*, No. 03-10191-DPW,
2005 WL 102966 (D. Mass. Jan. 18, 2005) ........................................................................... 10

*LaChapelle v. Berkshire Life Ins. Co.,* 142 F.3d 507 (1st Cir. 1998) .......................................... 10

*Lumbermens Mut. Cas. Co. v. Offices Unlimited, Inc.*, 419 Mass. 462 (1995) ............................ 18

*Millennium Equity Holdings, LLC v. Mahlowitz*, 456 Mass. 627 (2010) ...................................... 18

*Picone v. Shire PLC*, No. 16-cv-12396-ADB,
  2017 WL 4873506 (D. Mass. Oct. 20, 2017) ........................................................ 16

*Pro. Real Estate Invs., Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49 (1993) .............. passim

*Sterling Merch., Inc. v. Nestle, S.A.*, 656 F.3d 112 (1st Cir. 2011) ........................................ 17, 18

*Steward Health Care Sys. LLC v. Southcoast Health Sys., Inc.*,
  No. 15-14188-MLW, 2016 WL 9022444 (D. Mass. Sept. 2, 2016) ........................................ 11

*Sullivan v. Nat'l Football League*, 34 F.3d 1091 (1st Cir. 1994) .................................................. 18

*Tomei v. Corix Utilities (U.S.) Inc.*, No. 07-CV-11928-DPW,
  2009 WL 2982775 (D. Mass. Sept. 14, 2009) .......................................................................... 19

*United Mine Workers of Am. v. Pennington*, 381 U.S. 657 (1965) ............................................. 11

*Watterson v. Page*, 987 F.2d 1 (1st Cir. 1993) ............................................................................ 10

*Westmac, Inc. v. Smith*, 797 F.2d 313 (6th Cir. 1986) ................................................................ 13

**Statutes**

M.G.L. c, 94G, § 3(d). ................................................................................................................ 3

M.G.L. c. 93 § 1 ........................................................................................................................ 17

M.G.L. c. 94G, § 3 ...................................................................................................................... 2

**Rules**

Fed. R. Civ. P. 12(b)(6) ............................................................................................................ 9, 10

**Constitutional Provisions**

U.S. Const. Amend. I, cl. 6 ........................................................................................................ 11

**Bylaws**

Tyngsborough Zoning Bylaw § 1.10.20 ................................................................................ 3, 14

Tyngsborough Zoning Bylaw § 1.16.14 ............................................................................ 3, 6, 14

Tyngsborough Zoning Bylaw § 2.12.20 .................................................................................... 8

Tyngsborough Zoning Bylaw § 2.12.50 ................................................................................ 2, 4

Tyngsborough Zoning Bylaw § 2.15.11 ............................................................................ 2, 4, 8

Tyngsborough Zoning Bylaw § 2.15.20 ................................................................................ 6, 7

Tyngsborough Zoning Bylaw § 2.15.22 ............................................................... 4, 7, 8

Tyngsborough Zoning Bylaw § 5.10.01 ....................................................................... 2

Tyngsborough Zoning Bylaw § 5.40.01 ................................................................... 2, 14

Tyngsborough Zoning Bylaw § 5.40.02 ....................................................................... 2

Tyngsborough Zoning Bylaw § 5.60.04 ................................................................... 3, 14

**Treatises**

2 Areeda & Hovenkamp, *Antitrust Law*, ¶ 348a (2d. ed. 2000) .................................... 18

**Other Authorities**

https://www.maxsgolf.com/ (last accessed July 31, 2023) ............................................ 5

## INTRODUCTION

Defendants Sammartino Investments LLC ("Sammartino"), WWF LLC ("WWF"), John Brady, Robert Carr, Jr., and Justin Lundberg (collectively, the "Sammartino Defendants") move that this Court dismiss Plaintiff MJ's Market, Inc.'s ("Plaintiff" or "MJ's") Complaint under the *Noerr-Pennington* doctrine. The Complaint alleges that the Sammartino Defendants and, later, Defendants Jushi MA, Inc., Jushi Inc., and Jushi Holdings Inc. (collectively, the "Jushi Defendants") somehow engaged in unlawful petitioning activity designed to block MJ's from entering the cannabis market in Tyngsborough, Massachusetts. The gravamen of MJ's claims, however, constitute entirely legitimate appeals for government action, which are immunized under the *Noerr-Pennington* doctrine. Furthermore, the Complaint lacks factual allegations sufficient to show that any sham exception applies – because no such facts exist. The Court should, therefore, dismiss the Complaint against the Sammartino Defendants.

MJ's has also failed to allege, beyond insufficient conclusory allegations, that the Sammartino Defendants caused it to suffer an antitrust injury – or, indeed, any injury at all. The Complaint should be dismissed against the Sammartino Defendants for this additional reason. Finally, the Complaint fails to allege facts demonstrating that Messrs. Brady, Carr, or Lundberg, individually or directly participated in any conduct purportedly giving rise to MJ's claims. The Complaint, therefore, fails to state a plausible claim against Brady, Carr, and Lundberg and should be dismissed as to those individuals.

## FACTUAL BACKGROUND

### A.     The Zoning Bylaw.

Massachusetts law empowers municipalities to "adopt ordinances and by-laws that impose reasonable safeguards on the operation of marijuana establishments," including restrictions concerning "the time, place and manner of marijuana establishment operation" and "the number

1

of establishments in the city or town." M.G.L. c. 94G, § 3. Consistent with this authority, Tyngsborough (the "Town") amended its Zoning Bylaw in May 2018 to provide for Licensed Marijuana Establishments "in appropriate places and under reasonable conditions," while "minimiz[ing] the adverse impacts . . . on adjacent properties, residential neighborhoods, schools and other places where children congregate, and other land uses potentially incompatible with such Establishments." Compl. ¶ 34[1]; Town of Tyngsborough – Zoning Bylaw (amended through June 26, 2021) (the "Bylaw")[2] § 5.10.01 .

The Bylaw permits Licensed Marijuana Establishments to be located only in the Town's Business 3 District (the "B3 District") and, in all events, only by way of a special permit from the Town Planning Board (the "Planning Board"). Compl. ¶ 34; Bylaw § 5.40.01(d). Construction in the B3 District can take place on lots consisting of at least 80,000 square feet. Bylaw § 2.12.50. While the Bylaw provides for single-family residences to be built on lots of fewer than 80,000 square feet, it contains no provision allowing a commercial building to be built on an undersized lot. *Id.* § 2.15.11. Further, no marijuana retailer "shall be located within 500 feet of any pre-existing public or private school, licensed daycare center, church, library, playground, or indoor and outdoor active recreation area for children" or within 500 feet of another marijuana retailer. *Id.* §§ 5.40.01 (a) – (b), 5.40.02.

The Bylaw expressly prohibits the Planning Board from issuing a special permit for a marijuana establishment unless the Board makes "Mandatory Findings" that the establishment is (1) "designed to minimize any adverse visual or economic impacts on abutters and other 'parties in interest'"; (2) "fully permitted by all applicable agencies of the Commonwealth and is in

---

[1] For the purposes of this motion only, the Sammartino Defendants recite the allegations from Plaintiff's Complaint and do not admit or accept the same as true.

[2] A copy of the Bylaw is attached hereto as Exhibit 1.

2

compliance with all applicable state laws and regulation"; and (3) in compliance with "all of the conditions and requirements of Sections 5.40.00, and 5.60.00 of this Bylaw." *Id.* § 5.60.04.

In addition to these marijuana establishment-specific mandatory findings, the Bylaw prohibits the Planning Board from issuing a special permit for any use absent finding that the proposed use (1) "[i]s in harmony with the purpose and intent of this By-law"[3]; (2) "[w]ill not be detrimental or injurious to the neighborhood in which it is to take place"; (3) "[i]s appropriate for the site in question"; and (4) "[c]omplies with all applicable requirements of this By-law." *Id.* § 1.16.14.

### B.    The Town's Consideration of Marijuana Retailers.

Before a marijuana establishment can operate in a municipality, it must execute a Host Community Agreement ("HCA") with the municipality setting forth, *inter alia*, "all stipulations of responsibilities" between the municipality and the marijuana establishment. M.G.L. c, 94G, § 3(d). The Town formed a subcommittee of the Planning Board (the "Subcommittee") to review applicants seeking to operate marijuana establishments within the Town and recommend finalists with which to negotiate HCAs. Compl. ¶ 36. In or about September 2018, the Subcommittee identified three candidates for potential HCAs for the Town Board of Selectmen's (the "Select Board") consideration: Nature's Remedy, Royalty Group ("Royalty"), and MJ's. Compl. ¶ 39.

During its September 24, 2018 hearing, the Select Board expressed concerns about MJ's "size," "lack of revenue on [its] grow facility," and ability to "get the appropriate permits." Ex. 2 (Sept. 24, 2018 Select Board Meeting Mins.) at 6-7. The Select Board voted against negotiating an HCA with MJ's and in favor of negotiating HCAs with Nature's Remedy and Royalty. *Id.*;

---

[3] The express purposes of all the Bylaw provisions include "to lessen congestion in the streets" and "conserve the value of land and buildings." Bylaw § 1.10.20.

Compl. ¶¶ 38, 42. Thereafter, the Town executed HCAs with Nature's Remedy and Royalty. Compl. ¶ 42. Nature's Remedy proceeded to obtain all necessary permits and licenses and to develop its conforming site. Compl. ¶ 44. Royalty, however, did not complete the permitting and development process before its HCA expired. *Id*. ¶ 45.

When Royalty's HCA expired, the Town re-opened the application process to select an operator for a second marijuana retailer. *Id*. ¶ 46. MJ's submitted a new application, choosing to propose that its store be located at 405-409 Middlesex Road (the "Property"), the same location Royalty had chosen and failed to develop. *Id*. ¶¶ 41, 45, 53. On March 21, 2021, the Select Board voted to grant MJ's an HCA in connection with its proposal. *Id*. ¶ 53.

MJ's proposal was and remained deficient in several respects. The Property is smaller than 80,000 square feet and has a single-family residence on it despite being in the B3 District. Ex. 3 (Zoning Board of Appeals Record of Proceedings and Notice of Decision) at 2-3. Because its total area is fewer than 80,000 square feet, the Property is an undersized lot. Bylaw § 2.12.50. Indeed, none of the plans and specifications MJ's submitted includes sufficient information to perform the lot size calculation set forth in the Bylaw. Ex. 4 (Zoning Appeal Compl.) ¶ 46; s*ee* Bylaw § 2.12.41. The Bylaw contains provisions only for building single-family residences, not commercial buildings, on undersized lots. Bylaw § 2.15.11. Furthermore, the existing single-family residence on the Property means that it has a nonconforming use and structure, for which the Bylaw only has provisions allowing "changes, extensions and alterations." *Id.* § 2.15.22. Additionally, none of the plans and specifications MJ's submitted includes sufficient information to determine that, in accordance with Bylaw § 5.40.01(a), the proposed building would be more than 500 feet from the property boundary of an "indoor and outdoor active recreation area for

children" (i.e., the property located at 383 Middlesex Road known as Max's Country Golf[4]). Ex. 4 (Zoning Appeal Compl.) ¶ 47.

By a March 29, 2021 letter to the Select Board, counsel for Nature's Remedy and its affiliate Valiant Enterprises, LLC ("Valiant"), which owned the Property, objected to the Select Board granting MJ's an HCA. Ex. 5 (Mar. 29, 2021 Letter to Select Board) at 1. Those objections included MJ's failures to comply with the 80,000 square foot lot size requirement; provide a certified plot plan attesting that MJ's proposed facility is more than 500 feet from Nature's Remedy; submit an engineering certification that the proposed facility would be more than 500 feet from Max's Country Golf; and obtain a traffic study to determine the traffic impact of having two marijuana retailers near each other. *Id*. at 1-2; *see also* Compl. ¶ 54. Despite these objections, the Select Board executed an HCA with MJ's on April 12, 2021. Compl. ¶¶ 55, 56.

### C.    The Merger Agreement.

On April 16, 2021, the Sammartino Defendants executed a merger agreement with the Jushi Defendants. Compl. ¶ 59; *id*., Ex. 1 at 2 ("Merger Agreement"). As a result of the Merger Agreement, ownership of Nature's Remedy, the recipient and holder of marijuana cultivation, manufacturing, and retail licenses; McMann LLC, which provided certain administrative and other services to Nature's Remedy; and Valiant, which owns real property and equipment leased to Nature's Remedy, ultimately transferred to the Jushi Defendants. *Id*. at 2-3.

As consideration for the sale, Sammartino received cash, promissory notes, and stock. *Id*. at 7. In addition, recognizing that Nature's Remedy's value is impacted by the location of neighboring marijuana facilities, the Merger Agreement provides for "Additional Merger

---

[4] Max's Country Golf advertises "a range of amazing activities that will entertain the whole family" and that "[m]om and dad can drop the kids off at our facility and then go shopping" nearby. https://www.maxsgolf.com/ (last accessed July 31, 2023).

Consideration" depending on whether another marijuana retailer opened a store within a certain distance within 30 months of closing. *Id*. at 7-11.

>        **D.      MJ's Special Permit and Variance Applications.**

On or about July 6, 2021, MJ's applied to the Planning Board for a special permit. Compl. ¶ 65. The Planning Board held three public hearings, during which counsel for Nature's Remedy and Valiant opposed MJ's application and submitted written testimony demonstrating that MJ's proposed use and structure did not comply with the Bylaw and the proposed building was within 500 feet of both Nature's Remedy and Max's Country Golf. *Id.* ¶ 66; Ex. 4 (Zoning Appeal Compl.) ¶ 80.

In response to these valid issues, MJ's in fact cut off a corner of its proposed building to achieve a 500.5-foot setback from Nature's Remedy. Ex. 4 (Zoning Appeal Compl.) ¶ 81. The Planning Board did not consider, *inter alia*, whether MJ's use would adversely affect Nature's Remedy, the surrounding area, or traffic. *Id*. ¶ 82. The Planning Board also made no findings concerning MJ's proposed facility's proximity to Max's Country Golf – nor could it have done so because MJ's did not submit evidence of compliance with the 500-foot setback requirement for facilities for children. *Id*. ¶ 84

Lastly, the Planning Board ignored that the Property is an undersized lot, and that the Bylaw only contains provisions for building single-family residences on undersized lots. The Planning Board merely noted MJ's need to "apply for and be granted appropriate relief or a determination under Section 2.15.20 from the Zoning Board of Appeals to address the non-conforming size of the lot." *Id.* ¶ 98. Thus, the Planning Board could not have found, as Bylaw § 1.16.14 requires, that MJ's proposal "complies with all applicable requirements of the Zoning By-Laws." Ignoring these deficiencies, the Planning Board granted MJ's a special permit. *Id.* ¶ 95.

By application dated August 10, 2021, MJ's asked the Town Zoning Board of Appeals ("ZBA") for a variance from the Bylaw's minimum 80,000 square foot lot size requirement (the "Variance Application"). *Id.* ¶ 48. The Variance Application did not request a finding or variance under Bylaw § 2.15.20 to address the Property's nonconforming use and structure. *Id*. ¶ 49. The ZBA held a public hearing on the Variance Application on September 9, 2021, and, at that hearing, Nature's Remedy and Valiant's counsel raised the issue of the undersized lot *and* nonconforming use and structure, submitting a written memorandum detailing the Variance Application's deficiencies and the reasons MJ's failed to meet the necessary standards for a variance. *Id*. ¶ 50-52; Ex. 6 (Nature's Remedy and Valiant's Opp. Mem. to ZBA, Sept. 7, 2021).

Counsel explained that the Bylaw requires a minimum 80,000 square foot buildable lot, but MJ's lot is only 71,995 square feet. Counsel also cited case law demonstrating that a lot being undersized does not constitute a "hardship," and thus, the ZBA had no authority to grant a variance for the lot size requirement. Ex. 6 at 2. Counsel also reiterated objections the Select Board and Planning Board ignored, including MJ's failure to demonstrate 500 feet of distance between Nature's Remedy and MJ's proposed building; the lack of a traffic study and issues related to increased traffic; and the economic harm to Nature's Remedy, who complied with all zoning requirements by choosing a conforming lot for its store. *Id*. at 2-3. The September hearing was continued to October 14, 2021, at which meeting MJ's received permission to withdraw its Variance Application without prejudice. Ex. 7 (Oct. 14, 2021 ZBA Mins.) at 3.

On or about September 24, 2021,[5] MJ's applied to the ZBA for a finding under Bylaw § 2.15.22 allowing changes, extensions, or alterations to the Property's nonconforming use and structure (the "Finding Application"). Ex. 4 (Zoning Appeal Compl.) ¶ 53. The ZBA only

---

[5] By this time, the sale of Nature's Remedy and Valiant had closed.

considered the change to the Property's use and not that the Property is an undersized lot. *Id*. ¶ 56-57. Counsel for Nature's Remedy and Valiant (which the Jushi Defendants owned at that point) raised that issue at the hearing, along with concerns regarding MJ's proposed store's traffic impact. *Id*. ¶ 58.

The ZBA failed to consider critical aspects of MJ's proposal, which would have prohibited issuance of a variance. The ZBA considered MJ's application under Bylaw § 2.15.22, which provides for "changes, extensions, and alterations" to "[a] nonconforming structure or use," but the ZBA did not consider that MJ's proposal to razing the existing structure and build a new one was not a change, extension, or alteration. *Id*. ¶ 71, 74. The ZBA never discussed or considered Bylaw § 2.15.11, which addresses nonconforming lots and only provides for such lots to be "built upon or used for single family residential use." *Id*. ¶ 64. The ZBA also never discussed or considered whether any portions of the already undersized lot needed to be excluded from MJ's calculations, which would further increase the density, overcrowding, traffic, and congestion. *Id*. ¶ 69; *see* Bylaw § 2.12.20. Under the Bylaw's plain language, MJ's was not entitled to a variance.

### E.  The Zoning Appeal.

As a result of the Planning Board and ZBA's erroneous and harmful decisions, location of MJ's facility on the undersized nonconforming Property would have resulted in material adverse effects unique to Nature's Remedy. *Id*. ¶ 104. Being aggrieved and left with no other recourse, on November 9, 2021 the Jushi Defendants filed a zoning appeal in the Massachusetts Superior Court (the "Zoning Appeal"). Compl. ¶ 85; *see generally*, Ex. 4 (Zoning Appeal Compl.). The Zoning Appeal Complaint details each meritorious argument against MJ's proposal made first by the Sammartino Defendants and then by the Jushi Defendants – which the Town boards disregarded.

MJ's moved to compel the Jushi Defendants to post cash bond in the Zoning Appeal, arguing that the Zoning Appeal was brought "solely for the improper anti-competitive purpose of

preventing and delaying MJ's Market [] entry into the adult use retail marijuana market." Ex. 8 (Zoning Appeal Dkt. No. 5.1, MJ's Mem. in Supp. of Bond Motion) at 1. MJ's recognized that "[t]he fundamental considerations at work for the Court in determining whether to impose a bond are harm to the defendant and the public interest, financial burden to the Plaintiff, and *the relative merits of the appeal*." Ex. 9 (Zoning Appeal Dkt. No. 5.3, MJ's Reply in Supp. of Bond Mot.) at 1 (emphasis added).

The Jushi Defendants opposed the Bond Motion arguing that "[t]he information provided by Defendants concerning the selection process demonstrate that although the Board of Selectmen may have thought the location desirable, no consideration was given as to whether the proposed MJ's location could actually be permitted in compliance with the Bylaw." Ex. 10 (Zoning Appeal Dkt. No. 5.2, Opp. to Bond Mot.) at 6. The Superior Court denied the Bond Motion, clearly indicating that it saw the merits of the objections to MJ's proposal. *See* Ex 11 (May 27, 2022 Order on Bond Mot.). On March 8, 2023, the parties filed cross-motions for summary judgment in the Zoning Appeal, which are pending.[6] A mere few days after the state summary judgment motions were filed, MJ's decided to file its Complaint here.

## LEGAL STANDARD

To survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss,[7] a complaint must provide sufficient factual allegations to render the claims "plausible on [the] face [of the complaint]." *García–Catalán v. United States,* 734 F.3d 100, 103 (1st Cir. 2013). In making this determination, courts "differentiate between well-pleaded facts, on the one hand, and 'bald assertions,

---

[6] The cross-motions for summary judgment are scheduled to be heard on August 1, 2023.

[7] Motions to dismiss under the *Noerr-Pennington* doctrine are considered under Fed. R. Civ. P. 12(b)(6). *See Amphastar Pharms. Inc. v. Momenta Pharms., Inc.*, 850 F.3d 52, 54 (1st Cir. 2017).

unsupportable conclusions, periphrastic circumlocution, and the like,' on the other hand; the former must be credited, but the latter can safely be ignored." *LaChapelle v. Berkshire Life Ins. Co.,* 142 F.3d 507, 508 (1st Cir. 1998) (quoting *Aulson v. Blanchard,* 83 F.3d 1, 3 (1st Cir. 1996)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007))."In determining whether a [pleading] crosses the plausibility threshold, 'the reviewing court [must] draw on its judicial experience and common sense.'" *García–Catalán,* 734 F.3d at 103 (quoting *Iqbal,* 556 U.S. at 679).

Antitrust actions require the Court to balance several unique competing antitrust-related interests. *In re Carbon Black Antitrust Litig.*, No. 03-10191-DPW, 2005 WL 102966, *5 (D. Mass. Jan. 18, 2005). For example, a court should strongly consider "the costs of modern federal antitrust litigation and the increasing caseload of the federal courts counsel against sending the parties into discovery when there is no reasonable likelihood that the plaintiffs can construct a claim from the events related in the complaint." *Id*. (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

On a Rule 12(b)(6) motion, the Court may, without converting the motion to a summary judgment motion, consider "documents the authenticity of which are not disputed by the parties; official public records; documents central to plaintiffs' claim; and documents sufficiently referred to in the complaint." judgment." *Freeman v. Town of Hudson*, 714 F.3d 29, 36 (1st Cir. 2013) (citing *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993)). Further, "Federal courts may take judicial notice of proceedings in other courts if those proceedings have relevance to the matters at hand." *Steward Health Care Sys. LLC v. Southcoast Health Sys., Inc.*, No. 15-14188-MLW, 2016 WL

9022444, at *4 (D. Mass. Sept. 2, 2016) (considering state court proceedings because those proceedings were a "core component of [plaintiff's] sham litigation charge.").

## ARGUMENT

### A. The Sammartino Defendants' Petitioning Activity Is Immunized Under the *Noerr-Pennington* Doctrine.

Arising out of the First Amendment's guarantee of the right "to petition the Government for a redress of grievances," U.S. Const. Amend. I, cl. 6, the *Noerr-Pennington* doctrine has long barred antitrust claims that are based on genuine petitioning activity – even if that petitioning activity might have anti-competitive consequences. *Eastern R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 138 (1961)  ("*Noerr*"); *Pro. Real Estate Invs., Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 56-57 (1993); *Davric Maine Corp. v. Rancourt*, 216 F.3d 143, 147 (1st Cir. 2000) (citations omitted). Given its constitutional foundation, the *Noerr-Pennington* doctrine is expansive, encompassing petitioning any branch of government and protecting even "*false* statements presented to support such petitions." *Rancourt*, 216 F.3d at 147 (emphasis in original); *see also Noerr*, 365 U.S. at 138; *United Mine Workers of Am. v. Pennington*, 381 U.S. 657, 670-72 (1965) ("*Pennington*"); *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972).

As the U.S. Supreme Court has held, the Sherman Act "condemns trade restraints, not political activity, and, as we have already pointed out, a publicity campaign to influence governmental action falls clearly into the category of political activity. The proscriptions of the Act, tailored as they are for the business world, are not at all appropriate for application in the political arena." *Noerr*, 365 U.S. at 140-41. While the Sherman Act prohibits certain anticompetitive conduct, it does not prohibit "an attempt to persuade the legislature or the

executive to take particular action with respect to a law that would produce a restraint or a monopoly." *Id.* at 136.

The supposed anticompetitive conduct MJ's alleges here is exactly the kind of petitioning activity the *Noerr-Pennington* doctrine immunizes. MJ's alleges that, in advancing arguments in Town administrative proceedings and in the Zoning Appeal, the Sammartino Defendants and Jushi Defendants violated the Sherman Act. *See* Compl. ¶¶ 113-120. This kind of petitioning activity is protected by the U.S. Constitution and the *Noerr-Pennington* doctrine. MJ's Sherman Act claims, therefore, fail.

### B. MJ's Does Not Allege Facts Sufficient to Demonstrate that the "Sham" Exception to the *Noerr-Pennington* Doctrine Applies.

Apparently conceding that the *Noerr-Pennington* doctrine bars its Sherman Act claims, MJ's tries to plead around the doctrine in an attempt to invoke the so-called "sham" exception. *See* Compl. ¶ 13 (alluding to "the well-established antitrust immunity under the First Amendment's right to petition the government" under *Noerr-Pennington*). MJ's efforts are unavailing, and its conclusory allegations do not support the sham exception's application. Records of the petitioning activity about which MJ's complains demonstrate that the Sammartino Defendants' petitioning efforts were genuine. Thus, they are entitled to dismissal of MJ's Sherman Act claims.

The Supreme Court has recognized an exception to *Noerr-Pennington* immunity where petitioning activity "is a mere sham to cover . . . an attempt to interfere directly with the business relationships of a competitor." *Noerr*, 365 U.S. at 144. To demonstrate that the sham exception applies, MJ's bears the burden of showing, first, that the Sammartino Defendants' petitioning activity was "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits." *Pro. Real Est. Invs.*, 508 U.S. at 60. If and only if MJ's carries this burden, does the Court turn to "subjective motivation" to determine "whether the baseless suit conceals an

attempt to interfere directly with a competitor's business relationships through the use of the governmental *process* as opposed to the *outcome* of that process – as an anticompetitive weapon." *Id.* at 60–61 (italics in original; internal citations and brackets omitted) (citing *Columbia v. Omni Outdoor Advert., Inc.*, 499 U.S. 365, 380 (1991)).

To satisfy the first element of the sham exception (that the petitioning activity was objectively baseless), MJ's has the burden to prove that the Sammartino Defendants lacked probable cause for their petitioning activity. *Id.* at 62; *see also IGEN Int'l, Inc. v. Roche Diagnostics GmbH*, 335 F.3d 303, 311 (4th Cir. 2003). Probable cause "requires no more than a 'reasonabl[e] belie[f] that there is a chance that [a] claim may be held valid upon adjudication.'" *Pro. Real Est. Invs.*, 508 U.S. at 62-63 (citation omitted).[8] Most importantly, where probable cause exists, it "irrefutably demonstrates that an antitrust plaintiff has not proved the objective prong of the sham exception and that the defendant is accordingly entitled to *Noerr* immunity." *Id.* at 63; *see also Westmac, Inc. v. Smith*, 797 F.2d 313, 318 (6th Cir. 1986) ("when a lawsuit raises a legal issue of genuine substance, it raises a rebuttable presumption that it is a serious attempt to obtain a judgment on the merits instead of a mere sham or harassment.").

MJ's has not and cannot demonstrate that the Sammartino Defendants' petitioning was "objectively baseless," and its conclusory allegations otherwise, *see* Compl. ¶ 10, though false, do not carry MJ's weighty sham exception burden. *See Pro. Real Est. Invs.*, 508 U.S. at 63 ("Just as evidence of anticompetitive intent cannot affect the objective prong of *Noerr*'s sham exception, a showing of malice alone will neither entitle the wrongful civil proceedings plaintiff to prevail nor permit the factfinder to infer the absence of probable cause.").

---

[8] Lack of prior successful petitioning activity "does not automatically mean the action was unreasonable or without foundation." *See Pro. Real Est. Invs.*, 508 U.S. at 60 n.5.

While MJ's alleges that the "Defendants" participated in all aspects of the petitioning activity before the Town and in the Zoning Appeal, it is indisputable that the Sammartino Defendants are not parties to the Zoning Appeal. *See* Compl. ¶ 87; *see also* Ex. 4 (Zoning Appeal Compl.). Therefore, the only conduct of the Sammartino Defendants MJ's even arguably raises in the Complaint concerns the Town proceedings.[9] A simple review of those proceedings demonstrates that the Sammartino Defendants' objections and arguments were genuine and not objectively baseless.

MJ's alleges that the Sammartino Defendants opposed the Select Board's issuance of an HCA to MJ's based on, *inter alia*, MJ's failure to demonstrate 500 feet of distance from Nature's Remedy, failure to demonstrate 500 feet of distance from Max's Country Golf, traffic concerns, and the impact on Nature's Remedy. Compl. ¶ 54. Each of these concerns is, on its face, objectively reasonable and tied to requirements of the Bylaw. *See* Bylaw §§5.40.01(b) (500-foot distance required between marijuana retailers); 5.40.01(a) (500-foot distance required between marijuana retailer and facilities for children); 5.60.04 (requiring mandatory finding that proposed marijuana retailer "minimize[s] any adverse visual or economic impacts on abutters and other 'parties in interest'"); 1.16.14 (requiring a finding that proposed use complies with zoning requirements); 1.10.20 (purpose of Bylaw includes "to lessen congestion in the streets"). Indeed, as it readily admits, **MJ's revised its plans to address some of the Sammartino Defendants' objections**. Compl. ¶ 67. If the Sammartino Defendants' objections were objectively baseless, MJ's would not have altered any of its plans to address them at all.

---

[9] The sale of Nature's Remedy and its affiliates to the Jushi Defendants closed on September 9, 2021. Thus, the Sammartino Defendants did not even participate in all the proceedings before the Town.

The Sammartino Defendants' objections before the ZBA were likewise genuine and not objectively baseless. For example, the ZBA failed to consider that the Property is an undersized nonconforming lot and that the Bylaw only contains provisions allowing such lots to be "built upon or used for single family residential use." Ex. 4 (Zoning Appeal Compl.) ¶¶ 63-64. That this was a patent error is bolstered by the fact that the Town Meeting subsequently amended the Bylaw to empower the Planning Board to issue a special permit allowing the building of commercial buildings on undersize lots. Ex. 12 (May 3, 2022 Annual Town Meeting Mins.) at 19.

Lastly, while the Sammartino Defendants did not bring the Zoning Appeal, the proceedings there demonstrate that the Sammartino Defendants' objections at the Town level were not objectively baseless. The Zoning Appeal advances the same objections the Town rejected. As MJ's conceded in connection with its Bond Motion, one of the fundamental considerations in deciding whether to require a bond was the merits of the Zoning Appeal. Ex. 9 (Zoning Appeal Dkt. No. 5.3, MJ's Reply in Supp. of Bond Mot.) at 1. The Superior Court denied the Bond Motion, offering a clear indication that the Court saw merit in the Zoning Appeal and, by extension, the arguments advanced at the Town level.

The Sammartino Defendants engaged in objectively reasonable petitioning activity, and MJ's has failed to allege adequate facts to rebut that presumption. Therefore, the Sammartino Defendants are entitled to immunity from MJ's Sherman Act claims (Count I and II) under the *Noerr-Pennington* doctrine. *See Pro. Real Est. Invs.*, 508 U.S. at 62-63; *see Rancourt*, 216 F.3d at 148 (citing *Pro. Real Est. Invs.* 508 U.S. at 62-63).

Given MJ's failure to plausibly plead that the Sammartino Defendants' petitioning activity was objectively baseless, the Court need not and should not consider the second prong of the sham exception. *Pro. Real Est. Invs.*, 508 U.S. at 60–61. Even so, MJ's fails to allege nonconclusory

facts that, if proven, would show that the Sammartino Defendants used "the governmental *process* as opposed to the *outcome* of that process – as an anticompetitive weapon." *Id.* (italics in original). As discussed below, the Sammartino Defendants' petitioning activity did not cause MJ's an antitrust injury or any kind of injury. *See* Section D, *infra*. MJ's received its permits (even though the Town improperly issued them), and so MJ's cannot claim that the Sammartino Defendants caused it delay or any other injury. Moreover, MJ's makes no allegations, other than conclusory allegations that must be disregarded, that the Sammartino Defendants were not invested in the outcome of its petitioning activity.

MJ's has not alleged – and cannot allege – facts sufficient to demonstrate that the sham exception to the *Noerr-Pennington* doctrine applies. Thus, MJ's Sherman Act claims should be dismissed because the *Noerr-Pennington* doctrine immunizes the Sammartino Defendants' legitimate petitioning activity.

**C.    The *Noerr-Pennington* Doctrine Bars MJ's State Law Claims.**

Where the *Noerr-Pennington* doctrine bars Sherman Act claims and the same allegations form the basis for state law claims, the *Noerr-Pennington* doctrine likewise bars the state law claims. *See Picone v. Shire PLC*, No. 16-cv-12396-ADB, 2017 WL 4873506, at *5 n.5 (D. Mass. Oct. 20, 2017) (dismissing Sherman Act claims under the Noerr-Pennington doctrine and collecting cases and applying *Noerr-Pennington* to state law claims). Here, there is no doubt that the same allegations underlying MJ's Sherman Act claims likewise underlie its claims for violation of Chapter 93A, violation of the Massachusetts Antitrust Act, interference with advantageous contractual and business relations, and malicious use of process. *See* Compl. ¶¶ 136-150. Thus, just as the *Noerr-Pennington* doctrine bars MJ's Sherman Act claims against the Sammartino Defendants, so too does the *Noerr-Pennington* doctrine bar MJ's state law claims. *See C.R. Bard, Inc. v. Med. Elecs. Corp.*, 529 F. Supp. 1382, 1391 (D. Mass. 1982) (dismissing Sherman Act

claims and Massachusetts Antitrust Act claims that "are directly comparably to sections 1 and 2 .
. . of the Sherman Act"); *Bayou Fleet, Inc. v. Alexander*, 26 F. Supp. 2d 894, 897 (E.D. La. 1998)
(dismissing claim under Louisiana Unfair Trade Practices Act as barred by *Noerr-Pennington*);
*Aurora Cable Commc'ns, Inc. v. Jones Intercable, Inc.*, 720 F. Supp. 600, 603 (W.D. Mich. 1989)
(tortious interference claim based on "'petitioning' government should be dismissed under the
*Noerr–Pennington* doctrine"); *Cove Road Dev. v. Western Cranston Indus. Park Assoc.*, 674 A.2d
1234, 1237 (R.I. 1996) (*Noerr-Pennington* doctrine bars malicious prosecution claims because
"the constitutional protection of the right to petition is no less compelling in the context of
common-law tort claims than in the framework of federal antitrust legislation").

### D.    MJ's Failure to Plausibly Plead that the Sammartino Defendants Caused It Any Injury Is Fatal to Its Claims.

It is well-settled that, to prevail on its antitrust claims, MJ's must plausibly plead not just
that it was injured but that it suffered an "antitrust injury." *Sterling Merch., Inc. v. Nestle, S.A.*,
656 F.3d 112, 121 (1st Cir. 2011) (citing *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.*, 429 U.S.
477, 489 (1977)); *see also* M.G.L. c. 93 § 1 (Massachusetts Antitrust Act "shall be construed in
harmony with judicial interpretations of comparable federal antitrust statutes"). Failure to plead a
plausible antitrust injury is fatal to antitrust claims. *Sterling*, 656 F.3d at 121; *Hewlett-Packard
Co. v. Boston Sci. Corp.*, 77 F. Supp. 2d 189, 198 (D. Mass. 1999). "Antitrust injury is 'injury of
the type the antitrust laws were intended to prevent and that flows from that which makes
defendants' acts unlawful.'" *Sterling*, 656 F.3d at 121 (quoting *Brunswick*, 429 U.S. at 489). MJ's
must plead not only that it was injured because of the Sammartino Defendants' actions and that
those actions violated antitrust laws, but also that there was injury to competition itself. *Id.* "Injury
to competition is 'usually measured by a reduction in output and an increase in prices in the
relevant market.'" *Id.* (quoting *Sullivan v. Nat'l Football League*, 34 F.3d 1091, 1097 (1st Cir.

1994)). Requiring injury to *competition* is necessary (and courts should be skeptical of antitrust suits brought by competitors) because "unlike consumers, competitors have incentives to bring antitrust suits for purposes which are anti-competitive, for example to induce the defendant competitor to moderate their competition." *Id.* (citing 2 Areeda & Hovenkamp, *Antitrust Law*, ¶ 348a, at 387 (2d. ed. 2000)).

MJ's alleges in conclusory fashion that the Sammartino Defendants' and Jushi Defendants' purported anticompetitive conduct resulted in higher prices and lower quality products in "the Tyngsborough, northern Massachusetts and greater Merrimack Valley area." Comp. ¶¶ 113, 120-121, 134. These "labels and conclusions" are insufficient. *See Twombly*, 550. U.S. at 555-56. MJ's advances no allegations that higher prices or lower quality products causes *it* to suffer any injury. MJ's advances no allegations supporting that higher prices or lower quality products have or will, in fact, occur in the relevant market. MJ's advances no allegations even concerning the relevant market or the businesses serving that market. MJ's conclusory allegations are insufficient to allege a plausible antitrust injury. This proves fatal to MJ's federal and state antitrust claims.

Not only has MJ's failed to allege that it suffered an antitrust injury, but it has also failed to plausibly plead that the Sammartino Defendants' actions caused them any damages. This is fatal to MJ's state law tort claims. *Lumbermens Mut. Cas. Co. v. Offices Unlimited, Inc.*, 419 Mass. 462, 468 (1995) (Chapter 93A claim requires some "loss of money or property"); *G.S. Enterprises, Inc. v. Falmouth Marine, Inc.*, 410 Mass. 262, 272 (1991) (tortious interference claim requires injury); *Millennium Equity Holdings, LLC v. Mahlowitz*, 456 Mass. 627, 644–45 (2010) (abuse of process and malicious prosecution claims require injury). MJ's refrain throughout the Complaint is that Town proceedings and the Zoning Appeal frustrated and delayed the development and opening of their proposed facility. *See,* Compl. ¶¶ 12, 18, 64, 111, 114-15, 122, 127, 143, 153.

18

Because the Sammartino Defendants are not parties to the Zoning Appeal, however, the only conduct even arguably at issue concerns the proceedings before the Town. As repeated throughout the Complaint, MJ's received the approvals it requested from all of the Town's boards. Compl. ¶¶ 50, 56, 70, 79. Thus, nothing the Sammartino Defendants did in advancing meritorious arguments before the Town's resulted in any injury to MJ's. Indeed, the only proceeding MJ's alleges caused it any delay is the Zoning Appeal to which the Sammartino Defendants are not parties. *See* Compl. at 4 n.1. Having failed to allege that the Sammartino Defendants caused it any injury, MJ's state tort claims against those parties fail.

### E.   The Complaint Fails to State Claims Against Brady, Carr, and Lundberg.

Although all claims against the Sammartino Defendants should be dismissed pursuant to the *Noerr-Pennington* doctrine, MJ's claims against Messrs. Brady, Carr, and Lundberg also fail because MJ's has not alleged that they participated or directed any of the alleged misconduct. An officer or director cannot be liable for the actions of a business entity unless the officer or director directly participated in those actions. *Tomei v. Corix Utilities (U.S.) Inc.*, No. 07-CV-11928-DPW, 2009 WL 2982775, at *16 (D. Mass. Sept. 14, 2009) ("As a general rule, a corporate officer does not incur personal liability for activities of the corporation 'merely by virtue of the office which he holds in the corporation.'" (citation omitted)). This principle, likewise, extends to Sherman Act claims. *See Cape Cod Food Prod. v. Nat'l Cranberry Ass'n*, 119 F. Supp. 900, 919 (D. Mass. 1954) (no personal liability under the Sherman Act merely by virtue of being a corporate officer); *Brown v. Donco Enters., Inc.*, 783 F.2d 644, 646 (6th Cir. 1986) ("[i]ndividual liability under the antitrust laws can be imposed only where corporate agents are **actively and knowingly** engaged in a scheme designed to achieve anticompetitive ends."); *see, e.g., Fed. Trade Comm'n v. Shkreli*, 581 F. Supp. 3d 579, 637 (S.D.N.Y. 2022) (individual liable for Sherman Act violations where he

"conceived of, implemented, maintained, and controlled [the company's] anticompetitive and monopolistic scheme.").

Here, the Complaint merely alleges that Messrs. Brady, Carr, and Lundberg were "executives" of Sammartino. Compl. ¶ 59. Beyond this ambiguous identification, the Complaint fails to allege any facts demonstrating that any of these individuals actively and knowingly engaged in any of the alleged misconduct. Therefore, for this additional, independent reason, the Complaint should be dismissed as to Messrs. Brady, Carr, and Lundberg.

## **CONCLUSION**

For the foregoing reasons, the Sammartino Defendants respectfully request that the Court dismiss the Complaint in its entirety.

Respectfully submitted,

SAMMARTINO INVESTMENTS LLC, WWF LLC, JOHN BRADY, ROBERT CARR, JR., and JUSTIN LUNDBERG,

By their attorneys,

*/s/ Joseph P. Curtin*
Joseph P. Curtin (BBO # 556776)
Michael Thompson (BBO #673497)
Colin J. F. Edge (BBO # 696950)
**PRINCE LOBEL TYE LLP**
One International Place, Suite 3700
Boston, MA 02110
P: 617.456.8000
F: 617.456.8100
jcurtin@princelobel.com
mthompson@princelobel.com
cedge@princelobel.com

Date: July 31, 2023

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 31st day of July, 2023, in accordance with D. Mass. Local R. 5.2(b), the foregoing document filed through the ECF system, will be sent electronically to the registered participants on the Notice of Electronic Filing and physical copies will be sent to any non-registered participants.

Dated: July 31, 2023                          _____*/s/Colin J. F. Edge*_____
                                              Colin J. F. Edge, BBO #696950