UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| MJ'S MARKET, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JUSHI HOLDINGS, INC., JUSHI MA, | ) | |
| INC., JUSHI, INC., SAMMARTINO | ) | CIVIL ACTION NO. 4:23-CV-40037 |
| INVESTMENTS LLC, NATURE'S | ) | |
| REMEDY OF MASSACHUSETTS, INC., | ) | |
| WWF LLC, MCMANN LLC, VALIANT | ) | |
| ENTERPRISES, LLC, JOHN BRADY, | ) | |
| ROBERT CARR, JR. AND JUSTIN | ) | |
| LUNDBERG, | ) | |
| | ) | |
| Defendants. | ) | |

**<u>MEMORANDUM IN SUPPORT OF MOTION TO DISMISS</u>**

## <u>TABLE OF CONTENTS</u>

I.   SUMMARY OF ARGUMENT ................................................................................1

II.  RELEVANT BACKGROUND ............................................................................2

    A.  Plaintiff's Claims .........................................................................................2

    B.  The Town Proceedings .................................................................................2

    C.  The Zoning Appeal .......................................................................................4

III. APPLICABLE LEGAL STANDARDS ...............................................................6

IV.  ARGUMENT .......................................................................................................7

    A.  Plaintiff's Claims are Barred by the *Noerr-Pennington Doctrine* ............7

    B.  Plaintiff's Failure to Allege an Antitrust Injury is Fatal to Its Claims.......17

    C.  Plaintiff's Chapter 93 and Chapter 93A Fail with Its Antitrust Claims ...................19

V.   CONCLUSION ...................................................................................................20

## **TABLE OF AUTHORITIES**

**Cases**

81 Spooner Road, LLC v. Zoning Bd. of Appeals of Brookline, 461 Mass. 692 (2012) ............ 13

Aiello v. Planning Board of Braintree, 91 Mass. App. Ct. 354 (2017)........................................ 13

Alternative Electrodes, LLC v. Empi, Inc., 597 F. Supp. 2d 322 (E.D.N.Y.2009) ..................... 15

Arthur D. Little, Inc. v. E. Cambridge Sav. Bank, 35 Mass. App. Ct. 734 (1994)...................... 20

Ashcroft v. Iqbal, 556 U.S. 662 (2009)................................................................................. 1, 6, 18

Astoria Entm't, Inc. v. Edwards, 159 F. Supp. 2d 303 (E.D. La. 2001) (administrative).............. 7

Atlantic Richfield Co. v. USA Petroleum, Co., 495 U.S. 328 (1990) ......................................... 19

Balt. Scrap Corp. v. David J. Joseph Co., 237 F.3d 394 (4th Cir. 2001) (judicial) ...................... 7

Baltimore Scrap Corp. v. David J. Joseph Co., 237 F.3d 394 (4th Cir. 2001) ............................ 12

Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) ..................................................... 6, 7, 13, 18

Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, (1977)........................................ 17

C.R. Bard v. Med. Elec. Corp., 529 F. Supp. 1382 (D. Mass. 1982)........................................... 16

Cal. Motor Transp. Co. v. Trucking Unlimited, 404 U.S. 508 (1972).......................................... 8

Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101 (7th Cir. 1984) ........................................ 18

Cashmere & Camel Hair Mfrs. Inst., 284 F.3d 302, 320 (1st Cir. 2002) ................................... 20

City of Columbia v. Omni Outdoor Advertising, Inc., 499 U.S. 365 (1991) .......................... 9, 15

Davric Maine Corp. v. Rancourt, 216 F.3d 143 (1st Cir. 2000) .................................................... 7

Diomed, Inc. v. Vascular Solutions, Inc., 417 F. Supp. 2d 137 (D. Mass. 2006)........................ 20

Eastern Food Services, Inc. v. Pontifical Catholic University Services Assn., 357 F.3d 1 (1st Cir. 2004) ....................................................................................................................................... 17

Eastern R.R. Presidents Conf. v. Noerr Motor Freight, Inc., 365 U.S. 127 (1961)...................... 9

García–Catalán, 734 F.3d 100 (1st Cir. 2013) ............................................................................. 6

Gillette Co. v. Norelco Consumer Products Co., 946 F. Supp. 115 (D. Mass. 1996) ................. 20

Hewlett-Packard Co. v. Boston Scientific Corp., 77 F. Supp. 2d 189 (D. Mass. 1999).............. 19

Iannacchino v. Ford Motor Co., 451 Mass. 623 (2008)................................................................. 1

In re Colonial Mortgage Bankers Corp., 324 F.3d 12 (1st Cir. 2003) .......................................... 4

Jacobs v. Tempur-Pedic Int'l, Inc., 2007 U.S. Dist. LEXIS 91241 (N.D. Ga. Dec. 11, 2007)..... 18

JPS Elastomerics Corp. v. Specialized Tech. Res., Inc., 769 F. Supp. 2d 17 (D. Mass. 2011).... 20

LaChapelle v. Berkshire Life Ins. Co., 142 F.3d 507 (1st Cir. 1998).......................................... 6

Lantner v. Carson, 374 Mass. 606 (1978)................................................................................... 20

Leegin Creative Leather Products Inc. v. PSKS, Inc., 551 U.S. 877 (2007) .............................. 17

Liberty Lake Investments, Inc. v. Magnuson, 12 F.3d 155 (9th Cir.1993) .................................. 12

Milliken & Co. v. Duro Textiles, LLC, 451 Mass. 547 (2008) ................................................... 20

Murchison v. Zoning Board of Appeals of Sherborn, 485 Mass. 209 (2020) ............................. 13

Murrow v. Esh Circus Arts, LLC, 93 Mass. App. Ct. 233 (2018)............................................... 12

Picone v. Shire PLC, 2017 WL 4873506 (D. Mass. Oct. 20, 2017)............................................ 16

Professional Real Estate Investors ("PREI") v. Columbia Pictures Industries, 508 U.S. 49 (1993) ............................................................................................................. 7, 8, 9, 10, 11, 13

Puerto Rico Tel. Co., Inc. v. San Juan Cable Co. LLC, 874 F.3d 767 (1st Cir. 2017).............. 8, 9

Quaker State Oil Ref. Corp. v. Garrity Oil Co., 884 F.2d 1510 (1st Cir. 1989)........................... 19

Santander Consumer USA Inc. v. Walsh, 762 F. Supp. 2d 217 (D. Mass. 2010) ............. 8, 15, 20

Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55–56 (1st Cir. 2012) ................... 4

Shirokov v. Dunlap, Grubb & Weaver PLLC, 2012 WL 1065578 (D. Mass. Mar. 27, 2012)..... 16

<u>Sosa v. DirectTV, Inc.</u>, 437 F.3d 923 (9th Cir. 2006) ................................................. 16

<u>Sterling Merch., Inc. v. Nestle, S.A.</u>, 724 F. Supp. 2d 245 (D.P.R. 2010) ............................ 17, 18

<u>Steward Health Care Sys. LLC v. Southcoast Health Sys., Inc.</u>, 2016 WL 9022444 (D. Mass. Sept. 2, 2016) ..................................................................................................... 4, 17, 19

<u>Storage Tech. Corp. v. Custom Hardware Eng'g & Consulting, Ltd.</u>, 2006 WL 1766434 (D. Mass. June 28, 2006) ........................................................................................... 16

<u>Straumann Co. v. Lifecore Biomedical Inc.</u>, 278 F. Supp. 2d 130 (D. Mass. 2003) ................... 20

<u>Tomaiolo v. Mallinoff</u>, 281 F.3d 1 (1st Cir. 2002) .................................................. 16, 17

<u>United Food & Com. Workers Unions & Emps. Midwest Health Benefits Fund v. Novartis Pharms. Corp.</u>, 2017 WL 2837002 (D. Mass. June 30, 2017), aff'd, 902 F.3d 1 (1st Cir. 2018) ............................................................................................................. 8, 16, 17

<u>Watterson v. Page</u>, 987 F.2d 1 (1st Cir. 1993) ......................................................... 4

<u>Waugh Chapel S., LLC v. United Food & Commercial Workers Union Local 27</u>, 728 F.3d 354 (4th Cir. 2013) ..................................................................................................... 8, 15

## **Statutes**

28 U.S.C. § 1367(c)(3) ........................................................................................ 17

M. G. L. c. 40 ................................................................................................... 12

M. G. L. c. 40, § 17 ............................................................................................. 5

M. G. L. c. 40A ................................................................................................. 15

M. G. L. c. 40A, § 10 ............................................................................................ 5

M. G. L. c. 40A, § 6 ............................................................................................. 5

M. G. L. c. 93 ................................................................................................... 19

M. G. L. c. 93A ........................................................................................ 16, 19, 20

M. G. L. c. 93A, § 11 ........................................................................................... 20

## **Other Authorities**

Massachusetts Antitrust Act ............................................................................... 16, 19

Sherman Act ................................................................................................ 7, 8, 16, 19

Town of Tyngsborough Zoning Bylaw .......................................................... 3, 5, 6, 10, 11, 12

## **Rules**

Fed. R. Civ. P. 11 .............................................................................................. 11

Fed. R. Civ. P. 12 .............................................................................................. 11

Fed. R. Civ. P. 12(b)(1) ....................................................................................... 17

FRE 201(b)-(c) ................................................................................................... 4

Defendants Jushi Holdings, Inc., Jushi Inc., Jushi MA, Inc. and Nature's Remedy of Massachusetts, Inc. (collectively, "Jushi") hereby submit this memorandum in support of its Motion to Dismiss Plaintiff MJ's Market, Inc.'s ("Plaintiff" or "MJ's") Complaint.

## I.    SUMMARY OF ARGUMENT

This is a flawed antitrust action in which Plaintiff seeks the Court's assistance in subverting the constitutionally protected petitioning activity of Jushi.[1] Plaintiff cannot fashion an antitrust claim out of entirely lawful conduct, and its attempt to do so fails in at least three critical respects. First, Jushi's decision to exercise its rights in the permitting process was objectively reasonable, and immune from liability under the *Noerr-Pennington Doctrine*. Antitrust laws are not designed to protect competitors from having to face the scrutiny and objections of competitors and abutters during the zoning and permitting process. Second, Plaintiff's Complaint relies exclusively on its conclusory allegations and bare recitations of claim elements – that Jushi participated in constitutionally protected petition activity in "bad faith" for an "anticompetitive" purpose. This falls grossly short of the mark established by the U.S. Supreme Court in Ashcroft v. Iqbal and the Massachusetts Supreme Judicial Court in Iannacchino v. Ford Motor Co. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Iannacchino v. Ford Motor Co., 451 Mass. 623 (2008). Third, Plaintiff's claims fail as there is no allegation of an antitrust injury. Plaintiff does not even allege that it has or will be impacted by the alleged anticompetitive effects of Jushi's petitioning activity; namely, rising prices and limited products and services. Rather, it seeks compensation for the profits it has not been able to realize and

---

[1] The question for the Court is not whether Jushi ultimately will prevail on its petitioning activity. The question rather is whether Plaintiff has alleged any facts (plausible or otherwise) that Jushi's petitioning activity and its state court appeal was objectively baseless and brought for no other reason than to interfere with Plaintiff's business.

reimbursement for having to defend against Jushi's objections. On this record, the Court should dismiss the Plaintiff's Complaint.

For these reasons and those provided below, Jushi requests that this Court allow its Motion to Dismiss and dismiss Plaintiff's Complaint in its entirety, with prejudice.

## II.    RELEVANT BACKGROUND[2]

### A.    Plaintiff's Claims

Jushi is the owner of Nature's Remedy, a recreational marijuana dispensary located nearby Plaintiff's *proposed* dispensary.  See Comp., ¶ 7 (emphasis added). In its Complaint, Plaintiff claims that, throughout the Town Proceedings, Jushi raised baseless objections in a bad faith effort to prevent competition from moving into its area. See id., ¶ 10. Then, according to Plaintiff, Jushi sought to further delay and impede Plaintiff from opening its business by filing the Zoning Appeal. Id., ¶ 11. Plaintiff contends that Jushi's actions were motivated by its desire to stifle competition and to "maintain their existing monopoly" in the marketplace. See id., ¶¶ 8, 12. However, other than conclusory allegations, Plaintiff does not elaborate on the details of Jushi's monopoly or the makeup of the alleged relevant market. Similarly, Plaintiff does not allege facts regarding any potentially anticompetitive effects of Jushi's conduct.

### B.    The Town Proceedings

Plaintiff went through several phases to obtain the requisite governmental approvals, beginning with applying to the Tyngsborough Select Board for a Host Community Agreement. Comp., ¶ 53. In its Complaint, Plaintiff notes that Jushi objected to the granting of the Host Community Agreement based on the following concerns: (a) the distance between Plaintiff's proposed building and Nature's Remedy's building; (b) the distance between Plaintiff's building

---

[2] For the purposes of this Motion only, Jushi recites the allegations from Plaintiff's Complaint and does not admit or accept the same as true.

and an abutting business, Max's Country Golf; (c) traffic concerns; and (d) the impact on Nature's Remedy's sales. Id., ¶ 54. Notwithstanding Jushi's concerns, the Select Board granted Plaintiff's application. Id., ¶ 56.

Next, Plaintiff went through the process to obtain site plan and special permit approval from the Tyngsborough Planning Board. At the Planning Board hearings, as alleged by Plaintiff, Jushi opposed the application based on (1) "the need to assure a 500-foot distance between Plaintiff's retail structure and both Defendants' retail structure and Max's Country Golf" and (2) "Plaintiff's standing to seek a special permit without demonstrating authorization of the site's title owner." Id., ¶ 67. Jushi also argued that the Planning Board could not issue a permit approval prior to Zoning Board of Appeal ("ZBA") review and granting of relief to Plaintiff concerning the dimensions of the site. Id., ¶ 68. Again, notwithstanding Jushi's concerns, the Planning Board ultimately approved Plaintiff's special permit application and issued a decision on October 21, 2021. Id., ¶ 70.

At the ZBA stage, Plaintiff applied for a variance under Section 2.12.50 of the Town of Tyngsborough Zoning Bylaw (the "Bylaw") due to the undersized, nonconforming nature of the property. Id., ¶ 72. Jushi reiterated its concerns about the 500-foot buffer requirements and also raised concerns that the proposed location would present traffic problems. Id., ¶ 73. Plaintiff subsequently withdrew its variance application and sought a zoning determination – also known as an application for a finding – which the ZBA ultimately approved. Id., ¶ 75. At the public hearing on the application for a finding, Jushi once again raised its concerns about the lot size (i.e. undersized and non-confirming nature of the property) and the 500-foot buffer requirements. Id., ¶ 76.

Finally, Plaintiff sought and gained approval for its stormwater management plan from the Conservation Commission. Id., ¶ 81. Jushi made no appearances or objections at this stage. See id., ¶¶ 81-84.

### C.     The Zoning Appeal[3]

In addition to the above, Plaintiff also alleges that Jushi's appeal of the ZBA and Planning Board's (collectively, the "Boards") decisions to the Massachusetts Superior Court constitutes an illegal, anti-competitive action. Jushi filed its Zoning Appeal in Massachusetts Superior Court on November 9, 2021. See Complaint, attached hereto as Exhibit 1 ("Ex. 1) and Zoning Appeal Docket, attached hereto as Exhibit 2 ("Ex. 2"). Plaintiff did not move to dismiss Jushi's complaint or seek sanctions against Jushi. See id. It did, however, move to impose a bond based on arguments that the Zoning Appeal was frivolous and baseless. Id. The Superior Court denied that motion. Id. The parties have filed cross-motions for summary judgment, which are presently scheduled for a motion hearing on November 30, 2023.  Id.

In the Zoning Appeal, Jushi argues that the Boards' decisions were arbitrary, capricious, an abuse of discretion, based on legally untenable grounds and exceeded the Boards' authority. Ex. 1, ¶¶ 127, 129. In its complaint, Jushi alleged numerous procedural and substantive errors made by the Boards, as well as deficiencies in the factual record. With respect to the ZBA's

---

[3] For the purposes of its Motion to Dismiss, Jushi requests that the Court take judicial notice of its complaint and other pleadings filed in the Zoning Appeal, not for the truth of the allegations asserted, but with regard to the threshold sufficiency and heft of the allegations. See Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993) (courts may take judicial notice on request "for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint"); In re Colonial Mortgage Bankers Corp., 324 F.3d 12, 15 (1st Cir. 2003). See also FRE 201(b)-(c). The court may also consider "implications from documents attached to or fairly incorporated into the complaint . . . facts susceptible to judicial notice . . . [and] concessions in plaintiff's response to the motion to dismiss." Schatz v. Republican State Leadership Comm., 669 F.3d 50 (1st Cir. 2012) (internal quotations and citations omitted). Where Plaintiff's Complaint heavily features the Zoning Appeal, it is appropriate for the Court to take judicial notice of the pleadings filed in that action, including Jushi's complaint and the docket. See Steward Health Care Sys. LLC v. Southcoast Health Sys., Inc., 2016 WL 9022444, at *3-4 (D. Mass. Sept. 2, 2016) ("Federal courts may take judicial notice of proceedings in other courts if those proceedings have relevance to the matters at hand.").

decision, Jushi argued that the ZBA erred by considering Plaintiff's proposal pursuant to an application for a finding under Section 2.15.22 of the Bylaw rather than an application for a variance. Id., ¶¶ 66-67. Specifically, Section 2.15.22 of the Bylaw (Changes, Extensions and Alterations), provides that "[a] nonconforming structure or use may be changed, extended or altered, provided that in each case the Board of Appeals finds that such change, extension or alteration is not substantially more detrimental or injurious to the neighborhood than the existing nonconforming structure or use." Id., ¶ 33. However, Jushi noted that Plaintiff's proposal did not modify the existing non-conforming residential structure nor continue the non-conforming use. Id., ¶ 63. Rather, Plaintiff proposed removing the existing building and constructing an entirely new building on the undersized non-conforming property, rendering Section 2.15.22 inapplicable. Id., ¶ 71. Because the proposed building would increase the pre-existing non-conformity on the property, Jushi alleged that a finding pursuant to G. L. c. 40A, § 6 and a variance pursuant to G. L. c. 40A, § 10 were required.  Id., ¶ 72.  Even if a finding under 2.15.22 was proper, Jushi alleged that the ZBA failed to consider whether Plaintiff's proposed use would not be substantially more detrimental to the neighborhood, which must be established before approving a finding application. See id., ¶¶ 62, 69-70.

    In addition, Jushi alleged that the Planning Board failed to (i) make the findings necessary to grant Plaintiff's application, (ii) set forth adequate reasons for its approval, and (iii) improperly delegated a central finding concerning the project's compliance with the Bylaw to the ZBA.  Id., ¶¶ 78-101.

    In its complaint, Jushi also alleged, in detailed fashion, why it had standing as an "aggrieved person" to bring the chapter 40A appeal. Jushi alleged that it is a "party in interest" within the meaning of G. L. c. 40, § 17 and is therefore presumptively an aggrieved party. Id., ¶

102. Further, Jushi noted that the location of Plaintiff on the undersized nonconforming property, the only other existing or potential Adult Use (Recreational) Marijuana Retailer within Tyngsborough, would result in adverse effects that are unique to the Nature's Remedy property. Id., ¶ 104. This is particularly true where Plaintiff's proposed use at the property was approved with the bare minimum separating Plaintiff's proposed building and Nature's Remedy as required by Section 5.40.01(b) and Section 5.40.02 of the Bylaw (500.5 feet where 500 is required) and with significantly less distance between the driveways for both locations (about 300 feet as proposed). Id., ¶¶ 105, 109.

## III.   APPLICABLE LEGAL STANDARDS

To survive a Rule 12(b)(6) motion to dismiss, the facts alleged in the Complaint, taken as true by the court, "must state a plausible, not merely conceivable, case for relief." Sepúlveda-Villarini v. Dep't of Educ. of P.R., 628 F.3d 25, 29 (1st Cir. 2010) , citing Ashcroft v. Iqbal, 556 U.S. 662, 680-81 (2009). This plausibility standard is "not akin to a 'probability requirement'" but it "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678, quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556-57 (2007).   In making this determination, courts "differentiate between well-pleaded facts, on the one hand, and 'bald assertions, unsupportable conclusions, periphrastic circumlocution, and the like,' on the other hand; the former must be credited, but the latter can safely be ignored." LaChapelle v. Berkshire Life Ins. Co., 142 F.3d 507, 508 (1st Cir. 1998).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  "In determining whether a [pleading] crosses the plausibility threshold, 'the reviewing court [must] draw on its judicial experience and common sense.'" García–Catalán, 734 F.3d 100, 103 (1st Cir. 2013) (quoting Iqbal, 556 U.S. at 679).

Further, in the context of an antitrust action, allegations of antitrust violations are subject to a high degree of scrutiny, as discovery in antitrust claims can be prohibitively expensive. See Twombly, 550 U.S. at 558-59. The Plaintiff's obligation to allege in their Complaint an adequate basis and sufficient grounds for their entitlement to antitrust relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (dismissing complaint alleging antitrust conspiracy in violation of the Sherman Act for failure to state a claim).

## IV.   ARGUMENT

### A.   Plaintiff's Claims are Barred by the *Noerr-Pennington Doctrine*

The United States Supreme Court has long held that seeking relief from the various branches of government – legislative, executive or judicial – is not something that the Sherman Act was intended to regulate, and that such activity enjoys First Amendment protection. This principle is known as the *Noerr-Pennington Doctrine*, and it bars Plaintiff's claims.

The *Noerr-Pennington Doctrine* provides immunity from liability for claims asserted by a party based on its First Amendment right to petition the government for redress of grievances, including to courts and administrative agencies. See e.g., Professional Real Estate Investors ("PREI") v. Columbia Pictures Industries, 508 U.S. 49, 60 (1993). The *Noerr-Pennington Doctrine* is routinely relied upon by courts to dismiss antitrust challenges to a company's petitioning activity, whether in the courts, before administrative bodies or the executive branch, or directed toward legislators. See, e.g., Davric Maine Corp. v. Rancourt, 216 F.3d 143, 147 (1st Cir. 2000); Balt. Scrap Corp. v. David J. Joseph Co., 237 F.3d 394, 400-01 (4th Cir. 2001) (judicial); Astoria Entm't, Inc. v. Edwards, 159 F. Supp. 2d 303, 323 (E.D. La. 2001) (administrative), aff'd, 57 F. App'x 211 (5th Cir. 2003).

Plaintiff's Complaint pleads nothing more than classic *Noerr-Pennington* activity: the assertion of rights, claims, positions and defenses, in both administrative proceedings and in litigation in the courts. Under the most basic *Noerr-Pennington* principles, such activity cannot form the basis of antitrust claims under Section 1 or 2 of the Sherman Act. Further, where Plaintiff's state law claims are all based on the same exact petitioning activity, *Noerr-Pennington* immunity should also protect Jushi from liability under those claims as well. See United Food & Com. Workers Unions & Emps. Midwest Health Benefits Fund v. Novartis Pharms. Corp., 2017 WL 2837002, at *9 (D. Mass. June 30, 2017), aff'd, 902 F.3d 1 (1st Cir. 2018) (and cases cited) ("United Food").

1.  Plaintiff Fails to Plausibly Allege Entitlement to the Sham Litigation Exception to the *Noerr-Pennington Doctrine*

To avoid application of the *Noerr-Pennington Doctrine*, Plaintiff may assert in response that the sham litigation exception to the *Noerr-Pennington Doctrine* applies. Under this exception, Plaintiff bears the burden of demonstrating that Jushi's objections and claims during the Town Proceedings and the Zoning Appeal were and are: (1) objectively baseless and (2) subjectively intended to interfere with its business relationships instead of to achieve a legal remedy.[4] See PREI, 508 U.S. at 60, 62.

The PREI Court found that "the existence of probable cause to institute legal proceedings precludes a finding that an antitrust defendant has engaged in sham litigation. . . . Probable cause

---

[4] Jushi's petitioning activity should not be analyzed under Cal. Motor Transp. Co. v. Trucking Unlimited, 404 U.S. 508 (1972), which held a series of petitions as outside the scope of *Noerr-Pennington* immunity and analyzed such petitions without regard to their merit. The First Circuit has rejected the rule that PREI only applies to cases involving a single petition rather than a series of petitions. Puerto Rico Tel. Co., Inc. v. San Juan Cable Co. LLC, 874 F.3d 767, 771-72 (1st Cir. 2017). Further, besides Jushi's objections and claims having merit, the complained of petitioning activity here is a far cry from the activity found to be a sham due to its serial nature. See, e.g., Santander Consumer USA Inc. v. Walsh, 762 F. Supp. 2d 217, 237 (D. Mass. 2010); Waugh Chapel S., LLC v. United Food & Commercial Workers Union Local 27, 728 F.3d 354 (4th Cir. 2013); Hanover 3201 Realty, LLC v. Village Supermarkets, Inc., 806 F.3d 162, 180 (3d Cir.2015).

to institute civil proceedings requires no more than a reasonable belief that there is a chance that a claim may be held valid upon adjudication." <u>Puerto Rico Tel. Co., Inc. v. San Juan Cable Co. LLC,</u> 874 F.3d 767, 770, citing <u>PREI</u>, at 508 U.S. 62–63 (internal citations and quotation marks omitted). Moreover, "the legality of objectively reasonable petitioning 'directed toward obtaining governmental action' is 'not at all affected by any anticompetitive purpose [the actor] may have had.'" <u>Id</u>. at 59, quoting <u>Eastern R.R. Presidents Conf. v. Noerr Motor Freight, Inc.</u>, 365 U.S. 127, 140 (1961).

Even, if it is determined that a lawsuit was objectively baseless, a court must set out to "examine the litigant's subjective motivation" and examine whether "the baseless lawsuit conceals an attempt to interfere directly with the business relationships of a competitor . . . through the use [of] the governmental process – as opposed to the outcome of that process – as an anticompetitive weapon . . . ." <u>Id</u>. at 60–61 (internal citations and quotation marks omitted); <u>see also</u> <u>City of Columbia v. Omni Outdoor Advertising, Inc.</u>, 499 U.S. 365, 380 (1991) ("A classic example is the filing of frivolous objections to the license application of a competitor, with no expectation of achieving denial of the license but simply in order to impose expense and delay").

The Complaint apparently seeks to invoke this exception but fails to plead facts sufficient to do so.

    2.    <u>Objections Raised Before the Town and Claims Raised in Zoning Appeal Were Not "Objectively Baseless"</u>

In its Complaint, Plaintiff attempts to characterize Jushi's objections during the Town Proceedings and its claims in its Zoning Appeal as baseless and disingenuous. However, review of the facts alleged in Plaintiff's Complaint along with those asserted in Jushi's Zoning Appeal

reveal that Jushi was simply exercising its right to object to Plaintiff's proposed project based on legitimate factual and legal concerns as a nearby business. See PREI, 508 U.S. at 60.

As a business located essentially across the street from the property upon which Plaintiff proposes to locate is use, Jushi clearly had an interest in participating in the Town Proceedings. At those proceedings, every objection Jushi raised was based on legitimate concerns grounded in fact and law.  Among the concerns and objections raised by Jushi in its Zoning Appeal, were as follows:

> (i)    Whether the distance between Plaintiff's proposed building and Nature's Remedy was in violation of the 500-foot requirement of Section 5.40.01(b) and Section 5.40.02 of the Bylaw, Comp., ¶ 67;
>
> (ii)   Whether the distance between Plaintiff's proposed building and the property located at 383 Middlesex Road was in violation of Section 5.40.01(a) of the Bylaw, id.;
>
> (iii)  Whether Plaintiff may seek a special permit without demonstrating authorization of the site's title owner, id.;
>
> (iv)   Whether the Planning Board could issue a permit approval that was expressly conditioned on Plaintiff also obtaining a favorable decision from the ZBA, id., ¶ 69;
>
> (v)    Whether Plaintiff's proposed business would present a traffic hazard, see id., ¶ 73; and
>
> (i)    Whether locating two dispensaries next to one another would hurt the economic viability of both locations, id., ¶74.

Moreover, these concerns were not baseless, but rather tied to specific state and local zoning laws and those facts – or lack of facts – that bore on Plaintiff's non-compliance with those laws. Of course, Plaintiff's compliance with those laws would directly impact Nature's Remedy (and Jushi) as a nearby business. Notably, after Jushi raised its concerns regarding the 500-foot requirements and whether a party can seek a special permit without authorization of the site's title owner, Plaintiff revised its plans to bring them into compliance with the Bylaw. Comp., ¶ 67. The fact that Plaintiff addressed Jushi's concerns demonstrates that they were *not* objectively baseless arguments. The remainder of the objections Jushi made during the Town

Proceedings were also concerns that any nearby business would be expected to raise during such proceedings. While Plaintiff takes particular issue with Jushi's concerns regarding traffic, any business that is essentially across the street from a proposed business would be concerned about the proposed business' impact on traffic and safe access of customers to its business.

The fact that Plaintiff obtained the approvals it sought from the Boards is irrelevant to the analysis of whether Jushi's objections during the Town Proceedings were baseless. See PREI, 508 U.S. at 61 n. 5 (rejecting reasoning from hindsight to conclude that a losing position necessarily implies that the decision to assert it in litigation "must have been unreasonable or without foundation . . . at the outset").

Similarly, Jushi's Zoning Appeal was not objectively baseless, and Plaintiff fails to allege otherwise beyond mere labels and conclusions. In fact, its own decision to not move to dismiss the Zoning Appeal under Fed. R. Civ. P. 11 or 12 belies its position in this action. Additionally, the Superior Court rejected Plaintiff's request to compel Jushi to post a bond, declining to find Jushi's appeal frivolous or vexatious. See Ex. 2. That decision of the Superior Court alone demonstrates Jushi clearly had probable cause to believe it had a reasonable chance to succeed on the appeal. Its complaint presented detailed facts and law in support of its position that Plaintiff should not have been granted the special permit by the Planning Board or the approval by the ZBA. Specifically, Jushi alleged, among other reasons, that the Planning Board and ZBA erred because:

> (i)   Plaintiff was granted ZBA approval through a finding application pursuant to Section 2.15.22 of the Bylaw rather than an application for a variance, Ex. 1, ¶ 72;
>
> (ii)  The ZBA never considered or discussed whether Plaintiff's proposed use would not be substantially more detrimental to the neighborhood, which must be established before approving a finding application, id., ¶¶ 33, 69-70;

11

(iii)    The Planning Board never considered, discussed, nor made any findings
concerning numerous issues, including potential adverse effect that would
result from the proposed use on the proposed property to traffic, the
surrounding neighborhood, congestion and overcrowding, or Nature's
Remedy, id., 88-92; and

(iv)    The Planning Board could not make the necessary finding that Plaintiff's
application complied with the zoning bylaws, as required by Section
1.16.14 of the Bylaw, id., ¶ 93-94.

Tellingly, Plaintiff, in its Complaint, does not substantively address *any* of Jushi's

arguments in the Zoning Appeal for why the ZBA and Planning Board erred. Rather, Plaintiff

attacks Jushi's allegations that it has standing to bring the Zoning Appeal as an aggrieved party

and dismisses Jushi's substantive arguments in conclusory fashion as "baseless and unsupported

on the merits." Comp., ¶ 93. However, courts have held that a party's standing is not germane in

deciding whether the lawsuit itself was objectively meritless. See Baltimore Scrap Corp. v.

David J. Joseph Co., 237 F.3d 394, 400 (4th Cir. 2001) (zoning lawsuit not objectively baseless

even where lower court dismissed for lack of standing); Liberty Lake Investments, Inc. v.

Magnuson, 12 F.3d 155, 157 (9th Cir.1993). Aside from the irrelevance of Jushi's standing,

Plaintiff's Complaint is devoid of any allegations that demonstrate that Jushi's Zoning Appeal

was baseless or meritless.

Even if the Court were to consider Jushi's standing to bring the Zoning Appeal in its

analysis, Plaintiff still fails to plausibly allege that no litigant could have reasonably believed that

it may successfully allege standing under these circumstances. First, as alleged by Jushi in its

appeal, it is a "party in interest" within the meaning of G. L. c. 40 § 17.  Ex. 1, ¶ 102. It therefore

is a "person aggrieved" under c. 40 and consequently has standing to challenge the decisions of

the ZBA and Planning Board. See Murrow v. Esh Circus Arts, LLC, 93 Mass. App. Ct. 233, 235

(2018). Jushi also pled sufficient facts to plausibly allege its standing outside any presumptive

standing. Jushi alleged that, as a business located virtually across the street from Plaintiff's

proposed business, it stands to suffer an infringement of its legal rights by the ZBA and Planning Board's decisions.[5] See Murchison v. Zoning Board of Appeals of Sherborn, 485 Mass. 209, 213 (2020). Notably, given the razor thin margin of compliance with the 500-foot setback requirement from Nature's Remedy, Jushi will be severely limited in its ability to pursue any type of expansion in the future. See Ex. 1, ¶¶ 119-122. Jushi also alleged that the ZBA and Planning Board's decisions will affect it due to the potential impact on congestion, overcrowding, and traffic. Id., ¶¶ 106-118. These potential injuries are particular to Jushi given its nearby location and are more than de minimis. Where the requirements for standing under c. 40 are intended to be broad and flexible, Jushi had a reasonable basis for believing it had standing to bring the Zoning Appeal. See Aiello v. Planning Board of Braintree, 91 Mass. App. Ct. 354, 362 (2017). Also, again, the fact that Plaintiff did not move to dismiss the Zoning Appeal, particularly where standing can be decided on a Rule 12(b)(6) motion, belies its allegations that Jushi's claims regarding its standing are baseless. See Ex. 2.

Based on the foregoing, Plaintiff has failed to allege facts that would plausibly lead to the conclusion that Jushi's objections at the Town Proceedings or its allegations in the Zoning Appeal were "objectively baseless." Such conclusory allegations of "objectively baseless litigation," devoid of any factual allegations that demonstrate the conduct in question crossed the line that the Supreme Court demarcated in PREI, fails utterly to meet basic pleading standards. Twombly, 550 U.S. at 555, 570; Iqbal, 129 S. Ct. at 1949-50. Plaintiff's antitrust claims, therefore, should be dismissed.

---

[5] A party may establish standing under G. L. c. 40A outside of the presumptive grounds granted to abutters. See 81 Spooner Road, LLC v. Zoning Bd. of Appeals of Brookline, 461 Mass. 692, 701 (2012).

3.      <u>Plaintiff Also Fails to Plausibly Allege the Second Prong of the Sham Litigation Exception</u>

Because Plaintiff has failed to meet its burden under the first prong of the sham litigation test, the Court need not reach the second. Assuming *arguendo* that Plaintiff met its burden under the first prong, it still has not alleged sufficient facts to plausibly allege that Jushi's subjective intent in opposing Plaintiff's project during the Town Proceedings and filing the Zoning Appeal was to conceal its real objective of interfering with Plaintiff's business as a competitor.

Plaintiff alleges that throughout the Town Proceedings and Zoning Appeal, Jushi purportedly has been motivated by its desire to preserve its monopolistic power as well as the financial incentives contained within the purchase agreement between Nature's Remedy of Massachusetts, Inc. and Jushi Holdings, Inc. (the "M&A Agreement"). First, the financial incentive in the M&A Agreement is an incentive reasonably tied to the revenue that Jushi will make from the Nature's Remedy location. Plaintiff's allegations that Jushi was motivated by the financial incentive is completely speculative.  Secondly, as further explained in the next section regarding Plaintiff's failure to allege antitrust injury, Plaintiff's allegation that the exclusion or delayed opening of a single dispensary in the alleged relevant market has or will allow Jushi to control market-wide pricing and product availability is completely unsubstantiated.[6]  Plaintiff's theory that Jushi was motivated by its monopolistic desires, therefore, is far-fetched and lacks the requisite factual support.

Further, this is not a case where a party's petitioning activity was or is blatantly unsubstantiated or repeated. <u>See</u> <u>Santander Consumer USA Inc. v. Walsh</u>, 762 F. Supp. 2d 217

---

[6] As of May 30, 2023, according to the Massachusetts Cannabis Commission, there are 286 retailers operating in the Commonwealth of Massachusetts and 74 in Middlesex County alone.  <u>See</u> Cannabis Control Commission, "The State of Cannabis in Massachusetts – 2023" (May 30, 3032) attached hereto as <u>Exhibit 3</u> at 15 and 17.

(2017) (finding plaintiffs not entitled to *Noerr-Pennington* bar where they had initiated "other proceedings seeking unfairly and illegally to oppress other rightful trademark users and to expand whatever rights they might have in their marks with full knowledge of rightful and prior uses of the [trademark] by others"); <u>Alternative Electrodes, LLC v. Empi, Inc.</u>, 597 F. Supp. 2d 322, 326 & 330–331 (E.D.N.Y.2009) (finding sham where defendant used lawsuits to threaten competitors encompassing the plaintiff and initiated objectively unreasonable infringement lawsuit against the plaintiff and dismissed it without payment); <u>Waugh Chapel S., LLC</u>, 728 F.3d at 365 (finding sham where only one of fourteen proceedings was successful); <u>Hanover 3201 Realty, LLC</u>, 806 F.3d at 180 (finding "[d]efendants' meager record on the merits [of four actions] supports ... allegation that the filings were brought not to redress any grievances"). As described above, Jushi's objections at the Town Proceedings and claims in the Zoning Appeal were all based on legitimate legal and factual grounds. Despite Plaintiff's declaration that Jushi's Zoning Appeal is frivolous and baseless, Plaintiff took *no* action in the Zoning Appeal for months after being served with the Zoning Appeal.[7] Further, Plaintiff chose to wait for summary judgment to challenge the sufficiency of Jushi's claims, notwithstanding its purported certainty that Jushi lacked standing to bring the action, and the Superior Court declined to require that Jushi post a bond, rejecting plaintiff's claims that the appeal was frivolous. Plaintiff has failed to plausibly allege that Jushi proceeded with its course of action with "no expectation of achieving denial of the [approvals] but simply in order to impose expense and delay." <u>Omni</u>, 499 U.S. at 380.[8]

---

[7] Further, Plaintiff's allegation that Jushi's decision to file suit in Superior Court instead of Land Court was meant to cause further delay is nonsensical. <u>See</u> Comp., ¶ 11. Chapter 40A zoning appeals are routinely filed in Superior Court, and Plaintiff has not made a jurisdictional challenge or a request to transfer to Land Court. <u>See</u> Ex. 2.

[8] Plaintiff suffered no meaningful delay during the Town Proceedings as a result of Jushi's participation. The Select Board voted in favor of granting the Host Community Agreement to Plaintiff on March 21, 2021. Comp., ¶ 53. The Planning Board and ZBA granted Plaintiff with the necessary approvals in October 2021. See <u>id.</u>, ¶¶ 70, 75. Plaintiff

Therefore, where Plaintiff has failed to plausibly allege that Jushi's petitioning activity was intended to conceal its real motive of interfering with Plaintiff's business, Plaintiff's antitrust claims are barred by the *Noerr-Pennington Doctrine* and should be dismissed.

4.     Plaintiff's State Law Claims Should also be Barred Under *Noerr-Pennington*

The Massachusetts Antitrust Act provides that it shall be construed in harmony with the Sherman Act, and thus federal case-law represents principles applicable to the state statute as well. C.R. Bard v. Med. Elec. Corp., 529 F. Supp. 1382, 1386 (D. Mass. 1982). The same is true with respect to claims under c. 93A. In fact, the majority of circuits and, on occasion, this Court, has extended the *Noerr-Pennington Doctrine* to potentially apply to state law claims, including non-antitrust claims.[9] United Food, 2017 WL 2837002 (D. Mass. June 30, 2017) (applying the doctrine to state law antitrust claims and collecting cases from other jurisdictions); Picone v. Shire PLC, 2017 WL 4873506, at *5, n.5 (D. Mass. Oct. 20, 2017) (same); Storage Tech. Corp. v. Custom Hardware Eng'g & Consulting, Ltd., 2006 WL 1766434, at *35 (D. Mass. June 28, 2006) (tortious interference claim). This is appropriate to do where the state law claims are based on conduct sufficiently related to petitioning activity protected under the First Amendment. See Sosa v. DirectTV, Inc., 437 F.3d 923, 935, 935 n.8 (9th Cir. 2006). Here, Plaintiff's state law claims are based on the precise same alleged petitioning activity on which Plaintiff bases its antitrust claims; namely, Jushi's objections during the Town Proceedings and its filing of the

---

alleges Jushi's opposition compelled it to seek further approval for its stormwater management plan from the Conservation Commission, which was approved on January 11, 2022. Id., ¶¶ 81-83. As made clear by Plaintiff's allegations, however, its decision to seek this further approval was entirely on its own volition, and its attempt to tie any delay or expense incurred during the Town Proceedings to Jushi's actions is tenuous at best.

[9] While the First Circuit has not decided whether the *Noerr-Pennington Doctrine* is applicable to state law claims as a matter of federal law, the majority of circuits have recognized that Noerr-Pennington can apply to certain state law claims as well as federal claims. United Food, 2017 WL 2837002, at *9 (and cases cited). See also Shirokov v. Dunlap, Grubb & Weaver PLLC, 2012 WL 1065578, at *19 (D. Mass. Mar. 27, 2012), citing Tomaiolo v. Mallinoff, 281 F.3d 1, 11 n.9 (1st Cir. 2002) ("[t]he First Circuit has not addressed the issue directly, but its decisions indicate that it may view the *Noerr-Pennington Doctrine* expansively.")

Zoning Appeal. It does not provide any alternative theory for liability under those causes of action. Where such claims risk chilling the constitutionally protected right to petition the government of Jushi and others under the First Amendment, the *Noerr-Pennington Doctrine* is implicated. Tomaiolo, 281 F.3d at n.9; United Food, 2017 WL 2837002, at *9.[10] The state law claims, therefore, should also be dismissed where Plaintiff fails to plausibly allege sham petitioning activity.

### B. Plaintiff's Failure to Allege an Antitrust Injury is Fatal to Its Claims.

Even if the Court determines that Plaintiff's claims should survive the *Noerr-Pennington* bar, it should still dismiss Counts I and II because Plaintiff has failed to plausibly allege an antitrust injury and, therefore, lacks standing to assert claims under federal antitrust laws. To assert a claim under the federal antitrust laws, the plaintiff must have suffered an antitrust injury, meaning an injury of the type the antitrust laws were intended to prevent and that flows from that which makes the defendant's acts unlawful. Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 488-89 (1977). Antitrust "harm does not mean a simple loss of business or even the demise of a competitor but an impairment of the competitive structure of the market." Sterling Merch., Inc. v. Nestle, S.A., 724 F. Supp. 2d 245, 259 (D.P.R. 2010); Eastern Food Services, Inc. v. Pontifical Catholic University Services Assn., 357 F.3d 1, 4 (1st Cir. 2004). In sum, federal antitrust law seeks "the protection of competition, not competitors." Leegin Creative Leather Products Inc. v. PSKS, Inc., 551 U.S. 877, 906 (2007) (citation omitted). Therefore, Plaintiff

---

[10] If the Court declines to apply the *Noerr-Pennington* bar to Plaintiff's state law claims, it should nonetheless exercise its discretion under 28 U.S.C. § 1367(c)(3) to dismiss the state law claims for lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1) once the federal antitrust claims are dismissed. See Camelio v. American Fed'n, 137 F.3d 666, 672 (1st Cir. 1998) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law."). Where, as here, the federal claims are being dismissed at an early stage of the litigation, "the balance of competing factors ordinarily weigh strongly in favor of declining jurisdiction over state law claims[.]" Steward Health Care Sys. LLC, 2016 WL 9022444, at *7, quoting Camelio, 137 F.3d at 672.

must show not only that it was injured as a result of Jushi's actions and that those actions constituted an antitrust violation, but also that its injury is the type of injury the antitrust violation would cause to competition. <u>Sterling Merch., Inc. v. Nestle, S.A.</u>, 656 F.3d 112, 121 (1st Cir. 2011).

Plaintiff's alleged harm is not aligned with the expected anticompetitive effects of Jushi's alleged behavior. The anticipated anticompetitive effects of Jushi's behavior, as alleged by Plaintiff, include higher prices and limited and lower quality services in the alleged relevant market of northern Massachusetts and greater Merrimack Valley. Comp., ¶¶ 113, 120-121, 134. Setting aside the absence of *any* allegation that these alleged effects have actually occurred (or could actually occur),[11] Plaintiff does not allege that it has or will be harmed by the effects, nor could it. As Plaintiff acknowledged in its Complaint, only consumers and shoppers would be harmed by an increase in prices or a constraint on available products and services. <u>See</u> Comp., ¶¶ 120-121, 134.

Plaintiffs must do more, however, than label alleged misconduct as anticompetitive. <u>See, e.g.,</u> <u>Twombly</u>, 550. U.S. 544, 555-56 (on a motion to dismiss, an antitrust claim "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"); <u>Car Carriers, Inc. v. Ford Motor Co.</u>, 745 F.2d 1101, 1106-10 (7th Cir. 1984) (allegations that are merely "dress [ed] up in the language of antitrust" do not suffice on a motion to dismiss) (citation omitted); <u>Jacobs v. Tempur-Pedic Int'l, Inc.</u>, 2007 U.S. Dist. LEXIS 91241, at *9-10 (N.D. Ga. Dec. 11, 2007) (granting motion to dismiss antitrust claims supported only by conclusory allegations of "artificially elevated" prices and elimination of price competition in

---

[11] Plaintiff alleges *no facts* about the alleged relevant market or the relevant players in the market to demonstrate the impact of its exclusion on the market. In other words, the anticompetitive effects it alleges have occurred and will continue to occur are completely speculative and unsubstantiated.

mattress market). Because plaintiff fails to allege that its injury flows from any "competition-*reducing* aspect or effect of the defendant's behavior," they cannot allege "antitrust injury," loss that stems from that which makes defendant's conduct unlawful under the antitrust laws. <u>Atlantic Richfield Co. v. USA Petroleum, Co.</u>, 495 U.S. 328, 344 (1990) (emphasis added); <u>see also</u> <u>Hewlett-Packard Co. v. Boston Scientific Corp.</u>, 77 F. Supp. 2d 189, 198 (D. Mass. 1999) (Saris, J.) (failure to allege antitrust injury is a "fatal defect"). Where Plaintiff has failed to allege that it has or will suffer an antitrust injury, therefore, it lacks standing to assert its antitrust claims.

### C.    Plaintiff's Chapter 93 and Chapter 93A Fail with Its Antitrust Claims[12]

Even if this Court declines to extend the *Noerr-Pennington* bar to Plaintiff's state law claims, Plaintiff's failure to plead its federal antitrust claims should still be fatal to its claims under M.G.L. c. 93 and c. 93A. First, "[t]he Massachusetts Antitrust Act is to be construed in harmony with judicial interpretations of comparable federal antitrust statutes in so far as practicable. . . . Section 5 of the Massachusetts Act is directly comparable to section 2 of the Sherman Act" (citations omitted). <u>Steward Health Care Sys. LLC v. Southcoast Health Sys., Inc.</u>, 2016 WL 9022444, at *7 (D. Mass. Sept. 2, 2016). Plaintiff does not allege an alternative theory under its c. 93 claim. Thus, if the sham litigation allegations are excised from the Complaint, Plaintiff is left with no allegations to plausibly allege entitlement to relief under c. 93.

Similarly, if the antitrust claims are dismissed as baseless, nothing remains to support Plaintiff's c. 93A claim.[13] <u>See</u> <u>JPS Elastomerics Corp. v. Specialized Tech. Res., Inc.</u>, 769 F.

---

[12] Jushi's theories for dismissal under this section are in addition to its arguments for dismissal of Count III in Section III.A.ii.

[13] While, in limited situations, a party may bring a claim under c. 93A against another party which willfully filed a baseless lawsuit, the filing of the "baseless" lawsuit must have been motivated by a "pernicious purpose collateral to winning the suit." <u>Quaker State Oil Ref. Corp. v. Garrity Oil Co.</u>, 884 F.2d 1510, 1514 (1st Cir. 1989). If the Court finds that Plaintiff failed to plausibly allege that the Zoning Appeal constituted sham litigation, then it follows that Plaintiff likewise failed to plausibly allege for the purposes of its c. 93A claim that the Zoning Appeal was filed with a pernicious purpose.

Supp. 2d 17, 20 (D. Mass. 2011) (93A claim dismissed where antitrust claims dismissed and no

independent basis for liability under 93A alleged). Where, as here, a 93A claim is derivative of

Plaintiff's other claims, if the Court dismisses Plaintiff's other claims, it should dismiss

Plaintiff's 93A claim as well. See Cashmere & Camel Hair Mfrs. Inst., 284 F.3d 302, 320 (1st

Cir. 2002); Gillette Co. v. Norelco Consumer Products Co., 946 F. Supp. 115, 120 n.3 (D. Mass.

1996); Diomed, Inc. v. Vascular Solutions, Inc., 417 F. Supp. 2d 137, 146 (D. Mass. 2006);

Straumann Co. v. Lifecore Biomedical Inc., 278 F. Supp. 2d 130, 140 (D. Mass. 2003).[14]

## V.   CONCLUSION

For the reasons stated above, Defendants Jushi Holdings, Inc., Jushi Inc., Jushi MA, Inc.,

and Nature's Remedy of Massachusetts, Inc. respectfully ask that this Court GRANT their

Motion to Dismiss and dismiss Plaintiff's Complaint in its entirety, with prejudice.

---

[14] This Court should also dismiss Count III, Plaintiff's c. 93A claim, because Plaintiff has failed to allege that the acts or practices complained were "perpetrated in a business context," as required by G. L. c. 93A, §§ 2 and 11. See Arthur D. Little, Inc. v. E. Cambridge Sav. Bank, 35 Mass. App. Ct. 734, 743 (1994), quoting Lantner v. Carson, 374 Mass. 606, 611 (1978). See also Milliken & Co. v. Duro Textiles, LLC, 451 Mass. 547, 564 (2008). Specifically, "analysis of the applicability of G.L. c. 93A, § 11, requires a dual inquiry whether there was a commercial transaction between a person engaged in trade or commerce and another person engaged in trade or commerce, such that they were acting in a "'business context.'" Milliken & Co., 451 Mass. at 563. A commercial transaction need not occur in the ordinary course of a person's trade or business before liability under c. 93A will be imposed; however, "the mere filing of litigation does not of itself constitute 'trade or commerce.'" Id. at 564. Here, no commercial relationship ever existed between Plaintiff and Jushi, and Plaintiff does not allege otherwise. Plaintiff has not alleged that Jushi and Plaintiff have engaged in any type of marketplace transaction. Their only contact alleged in the Complaint occurred in the context of the Town Proceedings, Zoning Appeal, and this litigation. Accordingly, Plaintiff has plainly failed to plausibly allege that the acts and practices complained of occurred in a business context. See Arthur D. Little, Inc., 35 Mass. App. Ct. at 743.  Contrast Santander Consumer USA Inc., 762 F. Supp. 2d at 240-41.

JUSHI HOLDINGS, INC., JUSHI MA, INC.,
JUSHI, INC., AND NATURE'S REMEDY OF
MASSACHUSETTS, INC.,

By Their Attorneys,


*/s/ Douglas T. Radigan*
Douglas T. Radigan (BBO #657938)
Jeffrey R. Gribouski (BBO #706144)
BOWDITCH & DEWEY, LLP
311 Main Street
P.O. Box 15156
Worcester, MA  01615-0156
Telephone:  508-926-3497
Facsimile:  508-929-3197
E-mail:  dradigan@bowditch.com
E-mail:  jgribouski@bowditch.com

Lisa C. Wood (BBO #543811)
FOLEY HOAG, LLP
Seaport West
155 Seaport Boulevard
Boston, MA 02210-2600
Telephone:  646-927-5558
Facsimile:  646-929-5599
E-mail:  lwood@foleyhoag.com

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on 31st day of July, 2023, in accordance with D. Mass. Local R.

5.2(b), the foregoing document filed through the ECF system will be sent electronically to the

registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies

will be sent to those indicated as non-registered participants.


*/s/ Douglas T. Radigan*
Douglas T. Radigan

22