**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| MJ'S MARKET, INC.,<br><br>      Plaintiff,<br><br> v.<br><br>JUSHI HOLDINGS, INC., JUSHI MA, INC., JUSHI, INC., SAMMARTINO INVESTMENTS LLC, NATURE'S REMEDY OF MASSACHUSETTS, INC., WWF LLC, VALIANT ENTERPRISES, LLC, JOHN BRADY, ROBERT CARR, JR., and JUSTIN LUNDBERG,<br><br>      Defendants. | CIVIL ACTION NO. 4:23-cv-40037 |

**PLAINTIFF MJ'S MARKET, INC.'S OPPOSITION TO DEFENDANTS'**
**SAMMARTINO INVESTMENTS LLC, WWF LLC, ROBERT CARR, JR., JOHN**
**BRADY, AND JUSTIN LUNDBERG'S MOTION TO DISMISS**

Respectfully submitted,

**Plaintiff**
**MJ's Market, Inc.**

By its attorneys,

/s/Michael J. Duffy
Michael J. Duffy, BBO #652621
**TYMANN, DAVIS & DUFFY, LLP**
One Boston Place, Suite 2600
Boston, MA  02108
617.933.9490
mduffy@tddlegal.com

## TABLE OF CONTENTS

**TABLE OF CONTENTS**     ii.

**TABLE OF AUTHORITIES**     iii.

**INTRODUCTION**     1.

**FACTUAL BACKGROUND**     2.

**ARGUMENT**     2.

     **A.   The Standard of Review on a Motion to Dismiss**     2.

     **B. MJ's Market's Complaint Adequately Pleads that the "Sham"**     3.
        **Exception to the Noerr-Pennington Affirmative Defense Applies**

        **1.   MJ's Market's Complaint Should be Analyzed Pursuant to the**     4.
           **Standards Set forth in Cal. Motor Because Defendants'**
           **Conduct Constitutes a Series of Sham Petitions**

        **2.   Even if Viewed as a Single Sham Petition, MJ's Market's**     9.
           **Complaint Adequately Pleads Defendants' Petitioning Activity**
           **was Objectively Baseless and Subjectively Motivated for**
           **Anticompetitive Reasons**

     **C. Defendants' Litigation Misconduct also Gives Rise to a "Fraud"**     12.
        **Exception to the Noerr-Pennington Defense**

     **D. MJ's Market has Adequately Pleaded "Antitrust Injury"**     15.

     **E. Noerr-Pennington Does Not Bar MJ's Market's State Law Claims**     17.

     **F. Carr, Brady and Lundberg are Individually Liable for their**    
        **Participation in Violations of the Federal Antitrust Statute and State**
        **Unfair Competition Laws**     17.

**CONCLUSION**     20.

# TABLE OF AUTHORITIES

**Cases**

*Abarca Health, LLC v. PharmPix Corp*., No. CIV. 11-1218
BJM, 915 F. Supp. 2d 210, 2012-1 Trade Cases P 77894,
2012 WL 1123611 (D.Puerto Rico Mar. 31, 2012) ..........12

*Amarel v. Connell*, No. 94-15803, 102 F.3d 1494, 1996-2
Trade Cases P 71638, 36 Fed. R. Serv. 3d 1, 45 Fed. R. Evid.
Serv. 1390, 96 Cal. Daily Op. Serv. 8638, 96 Daily Journal
D.A.R. 14359, 97 Daily Journal D.A.R. 569, 1996 WL
686176 (9th Cir.(Cal.) Dec. 02, 1996) ..........19

*Amgen, Inc. v. F. Hoffmann-La Roche Ltd*., No. CIV.A. 05-
12237-WGY, 480 F. Supp. 2d 462, 2007-1 Trade Cases P
75766, 2007 WL 942104 (D.Mass. Mar. 30, 2007) ..........16

*Amphastar Pharmaceuticals, Inc. v. Momenta
Pharmaceuticals, Inc*., No. CV 16-10112-NMG, 297 F. Supp.
3d 222, 2018-1 Trade Cases P 80321, 100 Fed. R. Serv. 3d 4,
2018 WL 1399295 (D.Mass. Mar. 19, 2018) ..........16

*Amtrol, Inc. v. Vent-Rite Valve Corp*., No. CIV. A. 85-0681-
Y, 646 F. Supp. 1168, 55 USLW 2260, 1986-2 Trade Cases P
67245 (D.Mass. May 19, 1986) ..........16

*Andrx Pharmaceuticals, Inc. v. Biovail Corp. Intern*., No. 00-
5050, 256 F.3d 799, 347 U.S. App. D.C. 178, 2001-2 Trade
Cases P 73363, 2001 WL 855472 (D.C.Cir. July 31, 2001) ......3, 16

*Ashcroft v. Iqbal*, No. 07-1015, 556 U.S. 662, 129 S. Ct.
1937, 173 L. Ed. 2d 868, 77 USLW 4387, 2009-2 Trade
Cases P 76785, 73 Fed. R. Serv. 3d 837, 09 Cal. Daily Op.
Serv. 5961, 2009 Daily Journal D.A.R. 7005, 21 Fla. L.
Weekly Fed. S 853, 2009 WL 1361536 (U.S. May 18, 2009) ..........3

*Bristol-Myers Squibb Co. v. Ben Venue Laboratories*, No. 98-
1412 (WHW), 90 F. Supp. 2d 540, 2000 WL 298708 (D.N.J.
Mar. 23, 2000) ..........16

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc*., No. 75-904, 429 U.S. 477, 97 S. Ct. 690, 50 L. Ed. 2d 701, 1977-1 Trade Cases P 61255, 1977 WL 476292 (U.S.N.J. Jan. 25, 1977) ..........15

*California Motor Transport Co. v. Trucking Unlimited*, No. 154475, 404 U.S. 508, 92 S. Ct. 609, 30 L. Ed. 2d 642, 1972 Trade Cases P 73795, 93 P.U.R.3d 470, 1972 WL 328181 (U.S.Cal. Jan. 13, 1972) ......4, 5, 6, 9, 13

*Cape Cod Food Products v. National Cranberry Ass'n*, 119 F. Supp. 900 (D.Mass. Feb. 11, 1954) ..........18

*Cheminor Drugs, Ltd. v. Ethyl Corp*., No. 98-6004, 168 F.3d 119, 1999-1 Trade Cases P 72456, 1999 WL 99003 (3rd Cir.(N.J.) Mar. 01, 1999) ..........14

*Ciardi v. F. Hoffmann-La Roche, Ltd*., No. SJC-08495, 436 Mass. 53, 762 N.E.2d 303, 2002-1 Trade Cases P 73582, 2002 WL 191497 (Mass. Feb. 08, 2002) ..........17

*City of Columbia v. Omni Outdoor Advertising, Inc*., No. 89-1671, 499 U.S. 365, 111 S. Ct. 1344, 113 L. Ed. 2d 382, 59 USLW 4259, 1991-1 Trade Cases P 69378, 1991 WL 41544 (U.S.S.C. Apr. 01, 1991) ..........4

*Clamp-All Corp. v. Cast Iron Soil Pipe Institute,* No. 87-1697, 851 F.2d 478, 1988-1 Trade Cases P 68115, 7 U.S.P.Q.2d 1429, 1988 WL 66330 (1st Cir.(Mass.) June 30, 1988) ..........15

*Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.,* No. 78-3684, 690 F.2d 1240, 34 Fed. R. Serv. 2d 257, 1982-1 Trade Cases P 64693, 1982 WL 1092380 (9th Cir.(Cal.) Apr. 19, 1982) ..........13

*Continental Orthopedic Appliances, Inc. v. Health Ins. Plan of Greater New York*, No. CV 95-4541 (ADS), 994 F. Supp. 133, 1998-1 Trade Cases P 72071, 1998 WL 58868 (E.D.N.Y. Feb. 07, 1998) ..........18

*Engine Specialties, Inc. v. Bombardier Ltd*., No. 78-1492, 605 F.2d 1, 1979-2 Trade Cases P 62770, 1979 WL 504903 (1st Cir.(Mass.) July 25, 1979) ..........16

*F.T.C. v. RCA Credit Services, LLC*, No. 8:08-CV-2062-T-27AEP, 727 F. Supp. 2d 1320, 2010-2 Trade Cases P 77237, 2010 WL 2927688 (M.D.Fla. July 21, 2010) ..........19

*First Med Representatives, LLC. v. Futura Medical Corp.*, No. 01-73989, 195 F. Supp. 2d 917, 2002-1 Trade Cases P 73715, 2002 WL 485186 (E.D.Mich. Mar. 18, 2002) ..........18

*Freeman v. Lasky, Haas & Cohler*, No. 03-56588, 410 F.3d 1180, 05 Cal. Daily Op. Serv. 5099, 2005 Daily Journal D.A.R. 6985, 2005 WL 1389122 (9th Cir.(Cal.) June 14, 2005) ......13-14

*Georgandellis v. Holzer Clinic, Inc.*, No. 2:08-CV-626, 2009-1 Trade Cases P 76651, Med & Med GD (CCH) P 302899, 2009 WL 1585772 (S.D.Ohio June 05, 2009) ..........18

*Guimerfe, Inc. v. Perez-Perdomo*, No. CIV. 08-1243CCC, 2009 WL 918933 (D.Puerto Rico Mar. 31, 2009) ..........12

*Hanover 3201 Realty, LLC v. Village Supermarkets, Inc.*, No. 14-4183, 806 F.3d 162, 2015-2 Trade Cases P 79378, 2015 WL 7003365 (3rd Cir.(N.J.) Nov. 12, 2015) ........5, 6

*Hewlett-Packard Co. v. Boston Scientific Corp.*, No. CIV. A. 99-10244-PBS, 77 F. Supp. 2d 189, 1999-2 Trade Cases P 72732, 1999 WL 1103343 (D.Mass. Nov. 30, 1999) .....3, 15-16

*Higbie v. Kopy-Kat, Inc.*, No. CIV. 74-2432, 391 F. Supp. 808, 1975-2 Trade Cases P 60451 (E.D.Pa. Mar. 24, 1975) ..........18

*Honeywell Consumer Products, Inc. v. Windmere Corp.*, No. CIV.A. 97-400157-NMG, 993 F. Supp. 22, 1998 WL 61607 (D.Mass. Feb. 12, 1998) ..........11

*Hydranautics v. FilmTec Corp.*, No. 93-56426, 70 F.3d 533, 64 USLW 2338, 1995-2 Trade Cases P 71176, 33 Fed. R. Serv. 3d 44, 36 U.S.P.Q.2d 1773, 95 Cal. Daily Op. Serv. 8730, 95 Daily Journal D.A.R. 15150, 1995 WL 675833 (9th Cir.(Cal.) Nov. 15, 1995) ..........14

*Hytera Communications Corporation Ltd. v. Motorola Solutions, Inc.*, No. 19-CV-176, 623 F. Supp. 3d 857, 2022 WL 3645908 (N.D.Ill. Aug. 24, 2022) ..........11

*In re Burlington Northern, Inc.*, No. 87-2177, 822 F.2d 518, 1987-2 Trade Cases P 67650, 8 Fed. R. Serv. 3d 545 (5th Cir.(Tex.) July 14, 1987) ..........10

*In re Flonase Antitrust Litigation*, No. CIV.A. 08-3149, 795 F. Supp. 2d 300, 2011-1 Trade Cases P 77489, 2011 WL 2162898 (E.D.Pa. June 02, 2011) ..........3

*In re Gabapentin Patent Litigation*, No. C.A. 00-CV-3522(FSH), 649 F. Supp. 2d 340, 2009-2 Trade Cases P 76724, 2009 WL 2730503 (D.N.J. Aug. 27, 2009) ..........3

*In re Nexium (Esomeprazole) Antitrust Litigation*, No. CIV.A. 12-MD-02409, 42 F. Supp. 3d 231, 2014-2 Trade Cases P 78904, 2014 WL 4370333 (D.Mass. Sep. 04, 2014) ..........17

*In re Prograf Antitrust Litigation*, No. 1:11-MD-2242-RWZ, 2012-1 Trade Cases P 77809, 2012 WL 293850 (D.Mass. Feb. 01, 2012) ..........11

*In re Southeastern Milk Antitrust Litigation*, No. 2:08-MD-1000, 555 F. Supp. 2d 934, 2008-1 Trade Cases P 76165, 2008-2 Trade Cases P 76384, 2008 WL 2117159 (E.D.Tenn. May 20, 2008) ..........18

*Inserra Supermarkets, Inc. v. Stop & Shop Supermarket Co.*, LLC, No. 16-01697, 240 F. Supp. 3d 299, 2017 WL 773876 (D.N.J. Feb. 28, 2017) ..........5-6

*Kottle v. Northwest Kidney Centers*, No. 96-36258, 146 F.3d 1056, 1998-1 Trade Cases P 72185, 98 Cal. Daily Op. Serv. 4672, 98 Daily Journal D.A.R. 6626, 1998 WL 318807 (9th Cir.(Wash.) June 18, 1998) ..........14

*Kowal v. MCI Communications Corp.*, No. 92-7127, 16 F.3d 1271, 305 U.S. App. D.C. 60, 62 USLW 2624, Fed. Sec. L. Rep. P 98101, 28 Fed. R. Serv. 3d 100, 1994 WL 57216 (D.C.Cir. Mar. 01, 1994) ..........3

*Landmarks Holding Corp. v. Bermant*, No. 12, 664 F.2d 891, 1981-2 Trade Cases P 64367 (2nd Cir.(Conn.) Nov. 17, 1981) ..........10

*Liberty Lake Investments, Inc. v. Magnuson*, No. 92-35300, 12 F.3d 155, 1993-2 Trade Cases P 70456, 1993 WL 516970 (9th Cir.(Wash.) Dec. 16, 1993) ..........14

*Longleaf Mitigation Development Co., LLC v. Florida Mitigation Providers, LLC*, No. 3:07CV180J33HTS, 519 F. Supp. 2d 1233, 2008-1 Trade Cases P 76081, 2007 WL 2916390 (M.D.Fla. Oct. 08, 2007) .........19

*Lucas Industries, Inc. v. Kendiesel, Inc.*, No. CIV. A. 93-4480, 1995 WL 350050 (D.N.J. June 09, 1995) ..........3

*MCI Communications Corp. v. American Tel. and Tel. Co.*, No. 80-2171, 708 F.2d 1081, 1983-2 Trade Cases P 65520, 1982-83 Trade Cases P 65137, 12 Fed. R. Evid. Serv. 590, 1983 WL 962846 (7th Cir.(Ill.) Jan. 12, 1983) ..........10

*MCM Partners, Inc. v. Andrews-Bartlett & Associates, Inc.*, No. 94-3019, 62 F.3d 967, 1995-2 Trade Cases P 71088, RICO Bus. Disp. Guide 8867, 1995 WL 475702 (7th Cir.(Ill.) Aug. 11, 1995) ..........19

*Mercatus Group, LLC v. Lake Forest Hosp.*, No. 10-1665, 641 F.3d 834, 2011-1 Trade Cases P 77469, 2011 WL 2039638 (7th Cir.(Ill.) May 26, 2011) ..........13

*Murray v. Nat. Football League*, No. CIV. A. 94-5971, 1996-2 Trade Cases P 71479, 1996 WL 363911 (E.D.Pa. June 28, 1996) ..........18

*Nuance Communications, Inc. v. Omilia Natural Language Solutions, Ltd.*, No. CV 19-11438-PBS, 2020-1 Trade Cases P 81207, 2020 WL 2198362 (D.Mass. May 06, 2020) ..........11

*Ocasio-Hernandez v. Fortuno-Burset*, No. 09-2207, 640 F.3d 1, 2011 WL 1228768 (1st Cir.(Puerto Rico) Apr. 01, 2011) ..........2

*Otsuka Pharmaceutical Co., Ltd. v. Torrent Pharmaceuticals Ltd., Inc.*, No. 14-1078 JBS/KMW, 118 F. Supp. 3d 646, 2015-1 Trade Cases P 79218, 2015 WL 3869677 (D.N.J. June 22, 2015) ..........11

*Peckham v. Continental Cas. Ins. Co.*, No. 89-1556, 895 F.2d 830, 15 Fed. R. Serv. 3d 1375, 1990 WL 9526 (1st Cir.(Mass.) Feb. 08, 1990) ..........17

*Poller v. Columbia Broadcasting System, Inc.*, No. 45, 368 U.S. 464, 82 S. Ct. 486, 7 L. Ed. 2d 458, 5 Fed. R. Serv. 2d 886 (U.S.Dist.Col. Feb. 19, 1962) ..........3

*Primetime 24 Joint Venture v. National Broadcasting, Co., Inc.,* No. 98-9392, 219 F.3d 92, 2000-2 Trade Cases P 72968, 55 U.S.P.Q.2d 1385, 28 Media L. Rep. 1993, 21 Communications Reg. (P&F) 647, 2000 WL 913348 (2nd Cir.(N.Y.) July 07, 2000) ..........6

*Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc*., No. 91-1043, 508 U.S. 49, 113 S. Ct. 1920, 123 L. Ed. 2d 611, 61 USLW 4450, 1993-1 Trade Cases P 70207, 1993 Copr. L. Dec. P 27089, 26 U.S.P.Q.2d 1641, 1993 WL 134805 (U.S.Cal. May 03, 1993) ......4, 9, 13

*Puerto Rico Telephone Co., Inc. v. San Juan Cable LLC*, No. CIV. 11-2135 GAG, 885 F. Supp. 2d 534, 2012-2 Trade Cases P 78022, 2012 WL 3245433 (D.Puerto Rico Aug. 10, 2012) ..........16

*Puerto Rico Telephone Co., Inc. v. San Juan Cable, LLC*, No. CIV. 11-2135 GAG, 2012-2 Trade Cases P 78058, 2012 WL 4052018 (D.Puerto Rico Sep. 13, 2012) ..........16

*Puerto Rico Telephone Company, Inc. v. San Juan Cable LLC*, No. 16-2132, 874 F.3d 767, 2017-2 Trade Cases P 80181, 2017 WL 4900815 (1st Cir.(Puerto Rico) Oct. 31, 2017) ..........9

*Reifert v. South Central Wisconsin MLS Corp*., No. 04-C-969-S, 368 F. Supp. 2d 912, 2005-1 Trade Cases P 74848, 2005 WL 852389 (W.D.Wis. Apr. 12, 2005) ..........19

*Salomon S.A. v. Alpina Sports Corp*., No. CIV 88-206-D, 737 F. Supp. 720, 1990-2 Trade Cases P 69164, 1990 WL 68702 (D.N.H. May 18, 1990) ..........11

*SAS of Puerto Rico, Inc. v. Puerto Rico Telephone Co*., No. 94-1711, 48 F.3d 39, 63 USLW 2575, 1995-1 Trade Cases P 70908, 1995 WL 61537 (1st Cir.(Puerto Rico) Feb. 21, 1995) ......15-16

*Skinder-Strauss Associates v. Massachusetts Continuing Legal Educ., Inc*., No. CIV.A. 94-10868-PBS, 870 F. Supp. 8, 1994-2 Trade Cases P 70823, 1994 WL 683155 (D.Mass. Nov. 08, 1994) ..........11

*Sosa v. DIRECTV, Inc*., No. 04-55036, 437 F.3d 923, RICO
Bus. Disp. Guide 11035, 06 Cal. Daily Op. Serv. 1344, 2006
Daily Journal D.A.R. 1853, 37 Communications Reg. (P&F)
1038, 2006 WL 335796 (9th Cir.(Cal.) Feb. 15, 2006) .......... 13

*Substantial Investments, Inc. v. D'Angelo Franchising Corp*.,
No. CIV.A. 03-11202-RWZ, 2004-2 Trade Cases P 74543,
2004 WL 1932749 (D.Mass. Aug. 30, 2004) ....... 18, 19

Tillamook Cheese & Dairy Ass'n v. Tillamook County
Creamery Ass'n, No. 20104, 358 F.2d 115 (9th Cir.(Or.) Mar.
17, 1966) .......... 19

*U.S. v. Brown*, No. 89-50521, 936 F.2d 1042, 33 Fed. R.
Evid. Serv. 1165, 1991 WL 111418 (9th Cir.(Cal.) Feb. 15,
1991) .......... 19

*U.S. v. Wise*, No. 488, 370 U.S. 405, 82 S. Ct. 1354, 8 L. Ed.
2d 590 (U.S.Mo. June 25, 1962) .......... 18

*USS-POSCO Industries v. Contra Costa County Bldg. &
Const. Trades Council, AFL-CIO*, No. 92-15497, 31 F.3d
800, 146 L.R.R.M. (BNA) 2961, 128 Lab. Cas. P 11147,
1994-1 Trade Cases P 70647, 1994 WL 385201 (9th
Cir.(Cal.) July 26, 1994) .......... 6

*Vandervelde v. Put & Call Brokers & Dealers Ass'n*, No. 63
CIV. 3470, 344 F. Supp. 118, 1972 Trade Cases P 73931
(S.D.N.Y. Apr. 14, 1972) .......... 18

*Vandervelde v. Put & Call Brokers & Dealers Ass'n*, No. 63
CIV. 3470(MP), 344 F. Supp. 157, 21 A.L.R. Fed. 741, 1972
Trade Cases P 74034 (S.D.N.Y. June 06, 1972) .......... 18

*WAKA LLC v. DC Kickball*, No. CIVA 06-984 EGS, 517 F.
Supp. 2d 245, 2007-1 Trade Cases P 75723, 2007 WL
1549091 (D.D.C. May 25, 2007) .......... 11

*Waugh Chapel South, LLC v. United Food and Commercial
Workers Union Local 27*, No. 12-1429, 728 F.3d 354, 196
L.R.R.M. (BNA) 2681, 163 Lab. Cas. P 10627, 2013 WL
4505288 (4th Cir.(Md.) Aug. 26, 2013) .......... 6

*Whelan v. Abell*, No. 93-7138, 48 F.3d 1247, 310 U.S. App.
D.C. 396, 31 Fed. R. Serv. 3d 461, 1995 WL 96619 (D.C.Cir.
Mar. 10, 1995) ..........14

*Wojcieszek v. New England Tel. and Tel. Co*., No. 96-30037-
MAP, 977 F. Supp. 527, 1997-2 Trade Cases P 72016, 1997
WL 594723 (D.Mass. Sep. 26, 1997) ..........16

x

# INTRODUCTION

There is no genuine dispute in this case that Defendants Sammartino Investments LLC ("Sammartino"), WWF LLC, Carr, Brady and Lundberg are all parties to a contract that expressly provides upwards of $15 million in "additional compensation" to Sammartino if Defendants, in concert with Jushi Holding, Inc., Jushi, Inc., Jushi MA, Inc., Natures Remedy of Massachusetts, Inc. and Valiant Enterprises, LLC, successfully prevent MJ's Market, Inc. ("MJ's Market"), their only potential competitor at the time, from entering the Tyngsborough market. The means by which these parties effectuated their illegal, anticompetitive conspiracy was through opposing MJ's Market's permitting and development efforts at nearly every stage of the process with sham oppositions and challenges. The facts of that scheme are detailed in MJ's Market's Complaint. Defendants admit they entered into the agreement to prevent MJ's Market from entering the Tyngsborough market and that they took steps to carry it out. Apparently, Defendants believe that an argument that they are not expressly named parties to the Superior Court complaint that their co-conspirators, Jushi MA, Inc. and Valiant Enterprises, LLC, filed somehow short circuits their culpability and liability. In this, Defendants are seriously mistaken. Parties to an antitrust conspiracy are jointly and severally liable regardless of whether they actively participate in each aspect of the scheme or its implementation. See cite.

The additional arguments that Defendants make in their motion, claiming immunity under the *Noerr-Pennington* defense, fail for the same reasons that they do not insulate the other co-conspirators, Jusi Holdings, Inc., Jushi, Inc., Jushi MA, Inc., Natures' Remedy of Massachusetts, Inc., and Valiant Enterprises, LLC, from liability. MJ's Market has more than adequately alleged facts to support the "sham" and "fraud" exceptions to the *Noerr-Pennington* doctrine and, where MJ's Market is a competitor (in fact the only potential competitor at the time), MJ's Market has

standing and has clearly pleaded cognizable antitrust injury in this case.  For these reasons, discussed below and also argued in MJ's Market's Opposition to the separate motion to dismiss the other defendants in this case have filed, MJ's Market respectfully requests that Defendants' motion be denied in its entirety.

## FACTUAL BACKGROUND

MJ's Market's 159 paragraph Complaint contains detailed allegations concerning Defendants' conspiracy to restrain trade, unfair competition and other tortious and wrongful conduct. These allegations more than sufficiently detail a pattern of sham petitioning activity Defendants engaged in throughout MJ's Market's permitting process and not only states, but explains, how and why Defendants' claims were not only objectively baseless, but also motivated by a written contract with the explicit objective of monopolizing and restraining trade. Those detailed allegations are summarized in MJ's Market's Opposition to the Motion Dismiss that Defendants Jushi Holdings, Inc., Jushi, Inc., Jushi MA, Inc., Natures' Remedy of Massachusetts, Inc. and Valiant Enterprises, LLC (the "Jushi Defendants") have filed and they are incorporated herein by reference.

## ARGUMENT

### A.  The Standard of Review on a Motion to Dismiss

Defendants have a very high bar set for them to establish that MJ's Market's Complaint fails to state a claim for relief and is ripe for dismissal. To survive a motion to dismiss at the pleading stage, MJ's Market's Complaint need only "provide fair notice to the defendants and state a facially plausible legal claim." *Ocasio–Hernández v. Fortuño–Burset*, 640 F.3d 1, 12 (1st Cir. 2011). The Court's analysis parses the allegations of the complaint in two steps. First, "'legal conclusions couched as fact' or 'threadbare recitals of the elements of a cause of action'" are

identified and disregarded. *Id.*, *quoting, Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Second, the remaining "[n]onconclusory factual allegations" are then "treated as true, even if seemingly incredible." *Id.* The complaint "is construed liberally in the plaintiffs' favor, and [the Court should] grant plaintiffs the benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C.Cir.1994); *see also Andrx Pharm. v. Biovail Corp. Int'l*, 256 F.3d 799, 805 (D.C.Cir.2001). The Complaint passes muster if those facts and the reasonable inferenced drawn therefrom "state a plausible, not a merely conceivable, case for relief"; however, a court must not "attempt to forecast a plaintiff's likelihood of success on the merits." *Id.*

Whether the sham exception to the *Noerr-Pennington* affirmative defense applies is rarely a subject for a motion to dismiss. Whether petitioning activity is a sham is generally a question for the jury. *In re Flonase Antitrust Litig.*, 795 F. Supp. 2d 300, 310 (E.D. Pa.2011). Furthermore, because "the proof is largely in the hands of the alleged conspirators," dismissal procedures "should be used sparingly in complex antitrust litigation" until the plaintiff is given ample opportunity for discovery. *Poller v. Columbia Broad. Sys.*, 368 U.S. 464, 473 (1962); *Hewlett-Packard Co. v. Bos. Sci. Corp.*, 77 F. Supp. 2d 189, 195 (D. Mass. 1999) "The liberal approach to the consideration of antitrust complaints is important because inherent in such an action is the fact that all details and specific facts relied upon cannot properly be set forth as part of the pleadings." *Lucas Indus., Inc. v. Kendiesel, Inc.*, No. 93–4480, 1995 WL 350050, at *3 (D.N.J. June 9, 1995). The foregoing has not changed post *Twombly*. *See In re Gabapentin Patent Litig.*, 649 F. Supp. 2d 340 (D.N.J. 2009).

**B.  MJ's Market's Complaint Adequately Pleads that the "Sham" Exception to the Noerr-Pennington Affirmative Defense Applies**

The *Noerr-Pennington* doctrine, which is analyzed as an affirmative defense, is not absolute and is subject to exceptions.  One such exception is that the defense provides no protection for sham petitioning activity. *See, e.g., Prof'l Real Estate Investors Inc. v. Columbia Pictures Indus.*, 508 U.S. 49, 60-61 (1993) [hereinafter "*PREI*"]; *City of Columbia v. Omni Outdoor Advertising*, 499 U.S. 365, 380 (1991); *Cal. Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 516 (1972) [hereinafter "*Cal. Motor*"]. The approach by which the Court analyzes the so called "sham" exception differs depending on whether the challenge involves a single petition or action or a series of petitions or actions. *Compare PREI,* 508 U.S. 49 (1993) *with Cal. Motor*., 404 U.S. 508 (1972). Where a single petition is involved, the Court applies a strict two-pronged test examining first whether the petition is objectively baseless and second whether the sham conceals and attempt to interfere with the business relationships of a competitor using the process as a weapon. Where multiple petitions are involved, the analysis is more holistic, examining various factors including win-loss percentage, as circumstantial evidence of the defendant's subjective motivation, and other evidence of bad faith, including the nature and severity of the collateral harm caused by the petitioning activity. While MJ's Market contends the correct analysis for this case is under *Cal. Motor* and progeny and, thus, is broader, whether the Court agrees and proceeds in that direction or disagrees and applies the more limited two-pronged test, MJ's Market's Complaint more than sufficiently alleges facts to establish the sham exception applies.

    **1.  MJ's Market's Complaint should be Analyzed Pursuant to the Standards Set Forth in *Cal. Motor* Because Defendants' Conduct Constitutes a Series of Sham Petitions**

The Supreme Court in *Cal. Motor* confronted the same procedural posture presented in this case, where the district court had dismissed the plaintiffs' complaint under a *Noerr-Pennington* doctrine rationale. *Id*. 404 U.S. 508, 509. The Ninth Circuit reversed on appeal and the Supreme

Court affirmed the Ninth Circuit on certiorari. In its reasoning the Court held that the plaintiffs'
allegations "that petitioners 'instituted the proceedings and actions . . . with or without probable
cause, and regardless of the merits of the cases,'" were "on their face . . . within the 'sham'
exception" to the *Noerr-Pennington* doctrine. *Id*. The conduct at issue in that case involved one
group of trucking companies seeking to prevent another group of trucking companies from
entering the market by engaging in:

> a concerted action . . . to institute state and federal proceedings to resist and defeat
> applications by respondents to acquire operating rights or to transfer or register those rights.
> These activities, it is alleged, extend to rehearings and to reviews or appeals from agency
> or court decisions on these matters.

*Id*. at 509.  The Court reasoned that "[o]ne claim, which a court or agency may think baseless, may
go unnoticed; but a pattern of baseless, repetitive claims may emerge which leads the factfinder to
conclude that the administrative and judicial processes have been abused." *Id*. at 513.

Under *Cal. Motor* and its progeny, the rule is that when a party has filed "a series of legal
proceedings," the appropriate question is whether they were filed "without regard to merit and for
the purpose of using the governmental process . . . to harm a market rival and restrain trade."
*Hanover 3201 Realty, LLC v. Village Supermarkets, Inc.*, 806 F.3d 162, 180 (3d Cir. 2015)
(reasoning sham petitioning shown with four proceedings) [hereinafter *Hanover Realty*], *cert.
denied*, 136 S. Ct. 2451, 195 L. Ed. 2d 264 (2016). In conducting this inquiry, the Court undertakes
a "holistic review that may include [ ] the defendant's filing success—i.e., win-loss percentage—
as circumstantial evidence of the defendant's subjective motivations." *Inserra Supermarkets Inc.
v. Stop & Shop Supermarket Co*., LLC, 240 F. Supp. 3d 299, 307-08 (D. N.J. 2017), *quoting,
Hanover Realty* 806 F. 3d at 180–81. The Court also may consider "any other 'evidence of bad-
faith,' as well as 'the magnitude and nature of the collateral harm imposed on plaintiffs by
defendants' petitioning activity.'" *Inserra Supermarkets, Inc.*, 240 F. Supp. 3d at 308, *quoting,*

*Hanover Realty*, 806 F. 3d at 181; *see also Waugh Chapel S., LLC v. United Food & Commercial Workers Union Local 27*, 728 F.3d 354, 365 (4th Cir. 2013) (finding sham when one of fourteen petitions was successful). The fundamental question has a prospective, intent-focused quality, asking "[w]ere the legal filings made, not out of a genuine interest in redressing grievances, but as part of a pattern or practice of successive filings undertaken essentially for purposes of harassment?"); *USS-POSCO Indus. v. Contra Costa Cty. Bldg. & Constr. Trades Council*, 31 F.3d 800, 811 (9ᵗʰ Cir. 1994) ("[l]itigation is invariably costly, distracting and time-consuming; having to defend a whole series of such proceedings can inflict a crushing burden on a business. . . . When dealing with a series of [proceedings], the question is not whether any one of them has merit— some may turn out to, just as a matter of chance—but whether they are brought pursuant to a policy of starting legal proceedings without regard to the merits and for the purpose of injuring a market rival"). The relevant issue is whether the legal challenges "are brought pursuant to a policy of starting legal proceedings without regard to the merits and for the purpose of injuring a market rival." *Primetime 24 Joint Venture v. Nat'l Broad., Co.*, 219 F.3d 92, 101 (2d Cir. 2000) (reversing district court decision dismissing plaintiff's complaint which alleged the sham exception under the *Cal. Motor* test), *quoting*, *USS-POSCO Indus.31 F.3d at 811.*

In accordance with that authority, to fall within the sham exception of the *Noerr-Pennington* doctrine MJ's Market need not assert or prove that each of Defendants' petitioning activities was objectively baseless *ab initio*. Under the *California Motor* line of cases, the Court's analysis of a pattern of sham petitioning activity is more holistic, considering multiple factors including the subjective and other evidence of bad faith. MJ's Market has alleged in its Complaint that Defendants' conduct meets the test. Specifically, MJ's Market has alleged, among other things, that:

(a) After having acknowledged and agreed with the Select Board's approach and preference for co-locating both of the two anticipated adult use retail operations in the same area along Middlesex Road in Tyngsborough (which preference identified the two specific sites at issue--405-409 and 420 Middlesex Road) to obtain their own Host Community Agreement, Defendants nevertheless submitted an objection and opposition to the Select Board's negotiation of a Host Community Agreement with MJ's Market based, in part, on the location. (Complaint at ¶¶34-58)

(b) Within 4 days after the Select Board signed MJ's Market's Host Community Agreement, and before MJ's Market has submitted any plans or proposals for its facility (and, therefore, Defendants could not have known of any specific zoning-related objections), Defendants entered into the Merger Agreement, expressly forming a contract and conspiracy to oppose MJ's Market's entry into the marketplace. Nothing in the Merger Agreement, which ties some $15 million in additional compensation to preventing a competitor (MJ's Market was the only possible competitor at that time) from opening, conditions, limits or implies that any efforts to obtain that result must have an objectively valid factual or legal basis. In fact, the entire $15 million of additional compensation is time bound and, quite obviously by design, can be earned merely by delaying competition past preset date milestones, a result Defendants have already essentially achieved. (*Id*. at ¶¶59-64)

(c) Defendants objected to and opposed MJ's Market's application for a special permit for its facility without any good grounds or genuine basis for their objections and, among other things, requested that the Planning Board impose conditions and requirements on MJ's Market that find no source in the Tyngsborough zoning bylaw and that Defendants themselves were not required to demonstrate to obtain their own, essentially identical special permit.  (*Id*. at ¶¶64-80)

(d) Defendants objected to and opposed MJ's Market's application for a zoning determination from the Zoning Board of Appeals ("ZBA") that similarly was without any good grounds or legal support and which requested, among other things, that the ZBA (which had no jurisdiction to do so) require MJ's Market submit a traffic study before being granted any relief. (*Id*.)

(e) Defendants' objections, oppositions and obstructive requests and demands to each of the Select Board, Planning Board and ZBA were rejected—thus, on the merits, Defendants have succeed in none of their various administrative attempts to prevent MJ's Market's project from becoming permitted. (*Id*.)

(f) Despite having amassed an unbroken string of losses in each administrative forum, Defendants (Jushi MA, Inc. and Valiant Enterprises, LLC) filed an action in the Massachusetts Superior Court appealing the decisions of the Tyngsborough Planning Board and ZBA granting MJ's Market a special permit and zoning determination approving the project under Mass. Gen. Laws Ch. 40A (the Zoning Act). (*Id*. at ¶¶82-94)

(g) Defendants' Superior Court complaint fails to establish they have any standing to bring their appeal.  Defendants identified two purported claims of aggrievement (zoning-related harms): (a) adverse traffic impacts; (b) preclusion of Defendants' potential expansion based on the proximity of MJ's Market's facility to a required 500-foot buffer between adult use retail cannabis establishments.  Both claims were, and are, frivolous. Specifically, Defendants concede that (a) MJ's Market's facility complies with the 500-foot buffer zone requirement and (b) Defendants have no present-day plans of expansion (thus, any claims of harm rest entirely on speculation). Additionally, Defendants had not engaged any traffic expert and had no basis to allege any traffic harms when they filed their appeal. Since, Defendants' traffic expert has computed maximum potential "harm" at the peak hour amounts to the addition of *less than one vehicle* to queuing lengths and *mere seconds* to turning movements exiting Defendants' parking lot onto Middlesex Road—imperceptible to the average driver. (*Id*.)

(h) In raising their bogus claims of traffic related harm, Defendants failed to disclose to the Massachusetts Superior Court that they had assented to (and embedded itself as a party benefitting from) a separate project proposing to build a massive warehouse facility on a lot behind Defendants' facility, which proposed to add approximately 3500 daily vehicle trips down a driveway immediately adjacent to Defendants' parking lot. This warehouse project is not mentioned anywhere in Defendants' pleadings and was not considered at all in Defendants' traffic experts' analysis—as if Defendants and their hired guns inhabit a different universe of traffic worries when opposing MJ's Market's project versus assenting to a massively more impactful warehouse project in Defendants' backyard. (*Id*. at ¶¶95-108)

These allegations, which there can be no genuine debate have been detailed in MJ's Market's Complaint, outline a pattern of conduct and facts that (if true) establish Defendants expressly agreed to oppose a competitor's entry in the marketplace precisely to retain a monopoly in exchange for $15 million in additional consideration, the agreement to do so was not premised in any shape or form on having an objectively reasonable basis or even a prospect of success on the merits, and Defendants carried out their plan by launching a series of hopeless attacks against MJ's Market's project before three separate municipal boards and, when they lost each time, by filing enlisting two of their ranks to file a frivolous zoning appeal in the Superior Court. Allegations of conduct taking substantially this same form have been held to state a viable claim under the sham

exception to the *Noerr-Pennington* doctrine.[1] Accordingly, Defendants' motion to dismiss must be denied.

### 2. Even if Viewed as a Single Sham Petition, MJ's Market's Complaint Adequately Pleads Defendants' Petitioning Activity was Objectively Baseless and Subjectively Motivated for Anticompetitive Reasons

Even under the narrow test articulated in *PREI*, 508 U.S. at 60-61, Defendants' conduct is not insulated under the *Noerr-Pennington* doctrine where, like here, the petitioning activity is both "objectively baseless" and "conceals 'an attempt to interfere directly with the business relationships of a competitor." *Id.* MJ's Market has pleaded facts sufficient to support both prongs of the sham-litigation exception under *PREI* with respect to Defendants' challenges to MJ's Market's project. Accordingly, Defendants' motion to dismiss must be denied even under the narrower approach Defendants assert applies.

MJ's Market has pleaded, among numerous other allegations, the following facts, which are spelled out in substantial detail:

---

[1]     Defendants have attempted to escape the reach of the standard of review established under *Cal. Motor* and its progeny by claiming it has been rejected in the First Circuit and does not apply here. They further argue that the two-pronged approach articulated in *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*, 508 U.S. 49, 60, 113 S.Ct. 1920, 123 L.Ed.2d 611 (1993), must be applied instead. In support of that position, Defendants inaccurately cite to the First Circuit's decision in *Puerto Rico Telephone Company, Inc. v. San Juan Cable LLC*, 874 F.3d 767 (1st Cir. 2017). *Puerto Rico Tele. Co., Inc.* does not stand for the proposition Defendants assert. The First Circuit's decision in that case was authored by Justice Kayatta with a concurrence authored by Justice Barron and joined by Justice Torruella.  Although Judge Kayatta stated in the decision "[w]e find ourselves quite skeptical of the notion that a defendant's willingness to file frivolous cases may render it liable for filing a series of only objectively reasonable cases" (*id.* at 771), Justices Barron and Torruella stated otherwise in their concurrence, reasoning:

> [I]n affirming the grant of summary judgment in the defendant's favor, we do not establish such a limit on the scope of the sham exception. We avoid doing so because we do not hold that the "objectively baseless" requirement for triggering the sham exception set forth in the single petition case of *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*, . . . necessarily applies to each and every case involving a pattern of petitioning. We instead rely on a more record-based, case-specific line of reasoning that, as I read our opinion, leaves open the possibility that, PREI notwithstanding, a monopolist might be liable under the antitrust laws for engaging in a pattern of petitioning, even though no single filing in that pattern is objectively baseless. I agree with this prudent approach.

*Id.* at 773. Thus, two of the three Justices on the First Circuit panel were of the opinion that the Supreme Court's reasoning in *California Motor* retains its vitality and a pattern of petitioning activity undertaken without regard to the merits of the claims could constitute sham petitioning activity outside the protections of the Noerr-Pennington doctrine. *Id.* at 773-75. The case at bar is precisely one such example.

a. Defendants (Natures' Remedy) objected to the Select Board's entering into an HCA with MJ's Market asserting objections that were a complete 180-degree reversal of representations and acknowledgements Natures' Remedy made to obtain its own HCA, including agreement with and acceptance of the Town's plan to locate both cannabis retail facilities in a cluster along Middlesex Road. Defendants' objections were so contrary to their previous representations that they drew a rare rebuke from the Select Board, reiterating that Defendants had agreed to and accepted the cluster of facilities when they obtained their own HCA and permits.

b. Defendants entered into the M&A Agreement four days after MJ's Market's HCA was signed, committing to opposing the entry of a competitor in the Tyngsborough marketplace in exchange for $15 million in additional compensation to the "Seller," Sammartino, of which Brady, Carr and Lundberg are principals. This additional compensation is not conditioned on advancing any meritorious opposition and, by the express terms of the M&A Agreement, need not even be ultimately successful. The additional compensation is earned over certain timeline milestones notwithstanding whether a competitor ultimately commences operations.

c. True to their unlawful contract, Defendants then engaged in a series of bogus objections and oppositions to MJ's Markets' permitting applications, culminating in the frivolous zoning appeal to the Superior Court in November 2021—nearly two years ago.

d. Defendants (Jushi MA and Valiant) are not abutters to MJ's Market's site and are not presumed to have standing. To establish standing, and any jurisdiction for their zoning appeal, Defendants are required to demonstrate real, palpable and non-speculative harms to their property (not commercial) interests that are protected under the zoning laws. The grounds Defendants have asserted for this aggrievement are completely without factual or legal support. Two of Defendants' asserted claims for aggrievement are based on 500-foot buffer zone requirements that *have been satisfied* and are not subject to any real factual dispute. The only other ground Defendants asserted was based on alleged adverse traffic impacts that (a) Defendants had no expert opinion to support when they alleged them in November 2021, (b) have been vitiated entirely with Defendants' experts' subsequent report, which demonstrates in its quantitative data that the maximum impacts are of such insignificant degree that they are imperceptible to any average driver, and (c) Defendants alleged notwithstanding having agreed to a much larger, more impactful warehouse project on property immediately behind Defendants' site, which proposes and additional 3500 vehicle trips per day along a driveway adjacent to Defendants' parking lot and, plainly and obviously dwarfs any alleged impact of MJ's Market's project on traffic along Middlesex Road—a state highway that is swarmed with malls, strip malls, restaurants, and every other kind of commercial and business establishment imaginable.[2]

---

[2]     A litigant "who either knows he has no standing or who has no reasonable basis for asserting standing but who nonetheless files or joins in a lawsuit cannot claim the protection *Noerr-Pennington* extends to genuine attempts to influence judicial decisionmaking." *In re Burlington N., Inc.,* 822 F.2d 518, 530 (5th Cir. 1987), citing, *Landmarks Holding Corp. v. Bermant,* 664 F.2d 891, 896 (2d Cir.1981) (defendants appealed from zoning commission decisions "knowing that they lacked standing to do so"); *and MCI Communications Corp. v. AT & T,* 708 F.2d 1081, 1156 (7th

Detailed allegations like these have been held repeatedly to be sufficient to state a plausible claim of objective baselessness and bad faith and defeat a Rule 12(b)(6) motion to dismiss. *See, e.g., Nuance Comms., Inc. v. Omilia Nat. Language Solutions, Ltd.*, C.A. No. 19-11438-PBS, 2020 WL 2198362, *5 (D. Mass. May 6, 2020) ("[i]t is premature for the court to determine whether Noerr-Pennington immunity applies here. Without a claim construction hearing and discovery, this court has no basis to assess the merits of the underlying patent suit"); *In re Prograf Antitrust Litig*., No. 1:11-md-2242-RWZ, 2012 WL 293850, *6-7 (D. Mass. Feb. 1, 2012) (denying motion to dismiss antitrust claim and enumerating allegations sufficiently pleading sham exception to Noerr-Pennington doctrine); *Honeywell Consumer Products, Inc. v. Windmere Corporation*, 993 F. Supp. 22, 23–24 (D. Mass. 1998) (denying motion to dismiss antitrust counterclaim under Rule 12(b)(6) against assertion that the Noerr–Pennington doctrine bars the claim); *Skinder–Strauss Associates v. Massachusetts Continuing Legal Education, Inc.*, 870 F. Supp. 8, 10 (D. Mass. 1994) (denying motion to dismiss under *Noerr–Pennington* immunity doctrine inasmuch as counterclaim alleging that lawsuit was "objectively baseless and conceals attempt to interfere directly with the business relationships of a competitor" fell within sham litigation exception).[3]

---

Cir.1983) ("There can be no genuine attempt to petition the government when the petitioners know in advance that the governmental body lacks the authority to take the action desired."), *cert. denied*, 464 U.S. 891, 104 S.Ct. 234, 78 L.Ed.2d 226 (1983).

[3]     The raft of cases in this judicial district denying motions to dismiss antitrust complaints pleading similar sham exception claims is amplified by innumerable cases in other districts reaching the same result. *See, e.g., Salomon S.A. v. Alpina Sports Corp*., 737 F. Supp. 720, 725-26 (D. NH 1990) (pleading that patent claims were asserted in bad faith without knowledge as to whether patents were infringed was sufficient to plead sham exception and survive motion to dismiss); *Hytera Comm. Corp. Ltd. v. Motorola Solutions, Inc.*, 623 F. Supp. 3d 857, 874-75 (N.D. Ill. 2022) (holding complaint alleging petitioning activity was objectively baseless and intended subjectively to restrict competition and stating why was sufficient to survive motion to dismiss); *WAKA LLC v. DC Kickball*, 517 F. Supp. 2d 245, 251 (D. DC 2007) (holding claimant sufficiently pleaded sham exception to survive a Rule 12(b)(6) motion to dismiss where "defendants allege both prongs of the sham litigation exception in that they allege that plaintiff filed a baseless copyright infringement suit with the intent of inhibiting competition"); *Otsuka Pharm. Co. v. Torrent Pharms. Ltd*., 118 F. Supp. 3d 646, 655-58 (D.N.J. 2015).

Far from identifying any genuine frailty in MJ's Market's pleading, Defendants' motion essentially asserts disputes of fact concerning the merits of their challenges to MJ's Market's project. This is not the stuff of motions to dismiss. Furthermore, where Defendants as the parties engaged in an unlawful conspiracy to monopolize and restrain trade are in possession of most, if not all, of the salient information concerning the highly fact-specific questions concerning their scheme and intent, dismissing MJ's Market's claim without the advantage of discovery must be disfavored. As the District of Puerto Rico reasoned in *Abarca Health, LLC v. Pharmpix Corp.*, 915 F. Supp. 2d 210, 216 (D.P.R. 2012), "the applicability of Noerr– Pennington is a 'highly factual determination[ ] inappropriate for a dismissal motion," and "[t]hus, without expressing any opinion as to whether this defense could apply at summary judgment, it does not establish grounds for dismissal under Rule 12. *Id., citing, Guimerfe, Inc. v. Pérez–Perdomo*, No. 08–1243(CCC), 2009 WL 918933, at **3–4 (D.P.R. March 31, 2009); *cf. FTC v. Shire ViroPharma, Inc*., Civil Action No. 17-131-RGA, 2018 U.S. Dist. LEXIS 45727, at *18 (D. Del. Mar. 20, 2018) (noting whether alleged "activity was in fact a sham under either standard is a factual inquiry, which cannot be resolved at the motion to dismiss stage"). MJ's Market's claims, which are accepted as true for pleading purposes, must be viewed under the same lights, and generate the same result.

### C. Defendants' Litigation Misconduct also Gives Rise to a "Fraud" Exception to the *Noerr-Pennington* Defense

MJ's Market's allegations also invoke a "fraud" exception to the *Noerr-Pennington* defense raised. Three Supreme Court cases addressed the fraud exception to *Noerr-Pennington*. In *Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp*., 387 U.S. 172 (1965) – decided just six months after *Noerr* – the Court held proof that a petitioner "knowingly and willfully misrepresent[ed] facts" to an administrative agency to obtain a patent monopoly "would be sufficient to strip [the petitioner] of its exemption from the antitrust laws." *Id*. at 177. The Court

refused to condone fraud committed for the purpose of obtaining a monopoly, reasoning that the public has "a paramount interest in seeing that patent monopolies spring from backgrounds free from fraud or other inequitable conduct and that such monopolies are kept within their legitimate scope."[4]

In *Cal. Motor*, the Court distinguished the political petitioning in *Noerr* and *Pennington* from quasi-judicial proceedings (like land use hearings), reasoning that misrepresentations of fact or law, perjury, fraud, or bribery during administrative and judicial processes may vitiate *Noerr-Pennington*'s limited immunity. *Id.* at 517. Finally, in *PREI*, the Court referenced its earlier holdings in *Cal. Motor* and *Walker Process*, as well as Rule 60(b)(3) (relief from final judgment in light of fraud, misrepresentation, or misconduct) in sketching out the potential for a fraud exception, but stopped short of applying it to the facts before it, reasoning that case did not present whether, and to what extent, "Noerr permits the imposition of antitrust liability for a litigant's fraud or other misrepresentations." *Id.* 508 U.S. at 61 n.6.

The Circuit Courts have readily held that fraud on administrative agencies precludes invocation of *Noerr-Pennington*'s immunity. The D.C. Circuit, Ninth Circuit, Third Circuit, and Seventh Circuit all recognize that fraudulent petitioning to administrative agencies falls outside the scope of *Noerr-Pennington's* limited immunity. *See Mercatus Grp., LLC v. Lake Forest Hosp*., 641 F.3d 834, 842 (7th Cir. 2011) ("there is little doubt that fraudulent misrepresentations may render purported petitioning activity a sham not protected from antitrust liability."); *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 938 (9th Cir. 2006); *Freeman v. Lasky, Haas & Cohler*, 410 F.3d

---

[4]    Although *Walker Process* involved fraud on the PTO to obtain a patent, its tenets apply in other contexts. The Ninth Circuit denied Noerr-Pennington immunity to trucking companies that harmed a competitor by submitting fraudulent information to the Interstate Commerce Commission, reasoning that the *Walker Process* doctrine extends to those who commit fraud on a court or agency to obtain a competitive advantage. *See Clipper Express v. Rocky Mountain Motor Tariff Bureau, Inc.*, 690 F.2d 1240, 1247 (9th Cir. 1982), *cert denied*, 459 U.S. 1227 (1983).

1180, 1184 (9th Cir. 2005); *Cheminor Drugs, Ltd. v. Ethyl Corp.*,168 F.3d 119, 124 & n.12 (3d

Cir. 1999) (holding that "a material misrepresentation that affects the very core of a litigant's . . .

case will preclude Noerr-Pennington immunity . . . " and noting that its approach is consistent with

that of the Ninth and D.C. Circuits); *Kottle v. Nw. Kidney Ctrs.*, 146 F.3d 1056, 1060 (9th Cir.

1998) (recognizing "if the alleged anticompetitive behavior consists of making intentional

misrepresentations to the court, litigation can be deemed a sham if 'a party's knowing fraud upon,

or its intentional misrepresentations to, the court deprive the litigation of its legitimacy'"), *quoting,*

*Liberty Lake Invs., Inc. v. Magnuson*, 12 F.3d 155, 158 (9th Cir. 1993); *Hydranautics v. FilmTec*

*Corp.*, 70 F.3d 533, 538-39 (9th Cir. 1995); *Whelan v. Abell*, 48 F.3d 1247, 1255 (D.C. Cir. 1995)

(holding that Noerr-Pennington's limited immunity did not protect falsehoods); *Liberty Lake*, 12

F.3d at 158; *Fed. Prescription Serv., Inc. v. Am. Pharm. Ass'n*, 663 F.2d 253, 263 (D.C. Cir. 1981)

("[a]ttempts to influence governmental action through overtly corrupt conduct, such as bribes (in

any context) and misrepresentation (in the adjudicatory process), are not normal and legitimate

exercises of the right to petition, and activities of this sort have been held beyond the protection of

*Noerr*."). MJ's Market is not aware of any Circuit Court of Appeals that has concluded otherwise.

There does not appear to be a First Circuit case directly on point, however, several decisions within

the First Circuit apply *Walker Process* fraud analysis in the context of *Noerr-Pennington*

applicability where fraudulently obtained patents are alleged.

The substantive points of pleading a fraud exception to the *Noerr-Pennington* defense

essentially are that a plaintiff must allege misrepresentations that may have impacted the outcome

of the petition. Here, the complaint alleges, among other facts, that: (1) Defendants agreed to the

Town's plan for a cluster of retail cannabis operations in one area along Middlesex Road in order

to obtain their own HCA and then reversed course completely in arguing that the Select Board

should not grant an HCA to MJ's Market; (2) Defendants claimed land use related aggrievement form MJ's Market's project based on non-existent traffic harms without disclosing to the Superior Court (a) the existence of the M&A Agreement or (b) Defendants acceptance of and acquiescence to permit a far more impactful warehouse project immediately abutting Defendants' site to the rear, which proposed substantially more vehicle trips than MJ's Market's project would add and also proposed significant additional roadway infrastructure, including a traffic light that would moot all of Defendants concerns no matter how specious. These facts are enough to allege that Defendants' petitioning activity is infused with misrepresentation, omission and bad faith arguments that Defendants plainly know are not worth the paper on which they are printed.  Thus, MJ's Market has also pleaded a fraud exception to the *Noerr-Pennington* defense.

### D.  MJ's Market has Adequately Pleaded "Antitrust Injury"

Defendants' argument that MJ's Market has failed to plausibly plead "antitrust injury" is clearly wrong and easily rejected. The case law in this district (and across the entire country) is abundantly clear. Antitrust injury is an "injury of the type the antitrust laws were intended to prevent and that flows from that which makes the defendants' conduct unlawful." *Hewlett-Packard Co. v. Bos. Sci. Corp.*, 77 F. Supp. 2d 189, 198–99 (D. Mass. 1999), *quoting, Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.*, 429 U.S. 477, 489, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977). Antitrust laws were designed to protect the "competitive process that brings to consumers the benefits of lower prices, better products, and more efficient production methods." *Hewlett-Packard Co*., 77 F. Supp. 2d at 199, *quoting, Clamp–All Corp. v. Cast Iron Soil Pipe Institute*, 851 F.2d 478, 486 (1st Cir.1988). Accordingly, it follows fairly obviously that the "presumptive[ ] 'proper' plaintiff is a customer who obtains services in the threatened market or a competitor who seeks to serve that market." *Hewlett-Packard Co*., 77 F. Supp. at 199, *quoting, SAS of Puerto Rico v. Puerto Rico Tel.*

15

*Co.*, 48 F.3d 39, 44 (1st Cir.1995). Thus, as in the case at hand, when a defendant engages in anticompetitive acts to gain or maintain a monopoly, the competitor who is being driven out of or prevented from entering the market has standing. *Id; see also Wojcieszek v. New England Tel. & Tel. Co.*, 977 F. Supp. 527, 535 (D. Mass. 1997).

MJ's Market's complaint clearly and plausibly alleges expressly this type of injury against all of the Defendants, including Sammartino, WWF, Brady, Carr and Lundberg, every one of which is a party to the M&A Agreement. Specifically, MJ's Market's complaint contains sufficient factual allegations that Defendants' conduct not only delayed MJ's Market's entry into the market but also protected Defendant's market share.[5] Complaint at ¶¶113, 120, 131. MJ's Market also specifically alleges that by delaying a competitor from entering into a market, Defendants fostered an anti-competitive market, resulting in higher prices to the public. *Id*. Furthermore, MJ's Market also alleges it has lost revenue by the various delays. *Id*. at ¶¶122, 135. The Complaint alleges MJ's Market was injured due to the process of these proceedings, not simply the outcome. This is more than enough to meet the pleading requirement. *Compare Puerto Rico Tel. Co. v. San Juan Cable LLC*, 885 F. Supp. 2d 534, 538–39 (D.P.R. 2012), *on reconsideration in part*, No. CIV. 11-2135 GAG, 2012 WL 4052018 (D.P.R. Sept. 13, 2012).

MJ's Market is not required to plead or prove that the antitrust violation was the "sole cause of their injury, but only that it was a material cause". *Amphastar Pharms., Inc. v. Momenta Pharms., Inc.*, 297 F. Supp. 3d 222, 228 (D. Mass. 2018), *citing, Engine Specialties, Inc. v. Bombardier Ltd.*, 605 F.2d 1, 13 (1st Cir. 1979). The violation need only constitute a material

---

[5]  This Court has previously held that a potential competitor does not lack antitrust standing merely because it is not yet in the market. *See Amgen, Inc. v. F. Hoffmann-La Roche Ltd*., 480 F. Supp. 2d 462, 467 (D. Mass. 2007); *Amtrol, Inc. v. Vent–Rite Valve Corp*., 646 F. Supp. 1168, 1176–78 (D. Mass. 1986); *see also Andrx Pharms., Inc. v. Biovail Corp. Int'l*, 256 F.3d 799, 806–07 (D.C. Cir. 2001) (stating that a potential competitor must demonstrate intent and preparedness to enter a market); *Bristol–Myers Squibb Co. v. Ben Venue Labs*., 90 F.Supp.2d 540, 545–46 (D. N.J. 2000) (holding that a pharmaceutical competitor yet to receive FDA approval nonetheless had antitrust standing).

cause even where an injury has additional independent causes. *Id., citing, In re Nexium (Esomeprazole) Antitrust Litig*., 42 F.Supp.3d 231 (D. Mass. 2014) (noting that the material cause condition has been interpreted as a proximate cause requirement). Moreover, the First Circuit has noted that causation questions are "peculiarly within the competence of the factfinder" and should be left for the jury. *Id., citing*, *Peckham v. Cont'l Cas. Ins. Co*., 895 F.2d 830, 837 (1st Cir. 1990) ("[c]ausation questions of this sort are normally grist for the jury's mill").

   **E.  *Noerr-Pennington* Does not Bar MJ's Market's State Law Claims**

   None of MJ's Market's state law claims is ripe for dismissal either. These claims are examined under the same Rule 12(b)(6) standard and have been more than adequately pleaded. Defendants' only argument for dismissal apparently is that the state law claims are premised on MJ's Market's antitrust allegations and, thus, where they go one, they go all. The Court should reject this summary approach because Courts in the Commonwealth have interpreted Chapter 93A more expansively than the federal antitrust laws. *See Ciardi v. Hoffmann-La Roche, Ltd*., 436 Mass. 53, 55 (2002). Notwithstanding, even if Defendants' position that the state law claims are dependent on the antitrust claims is correct, for all the reasons discussed above, no ground for dismissal of any of MJ's Market's claims has been established and, therefore, the state law claims must also survive.

   **F.  Carr, Brady and Lundberg are Individually Liable for their Participation in Violations of the Federal Antitrust Statute and State Unfair Competition Laws**

   Defendants argue as a general proposition that corporate officers are not individually liable for wrongs committed by the business entities they operate. While potentially correct in the abstract, this vague and general notion misses the forest for the trees. Corporate officers and executives are typically held individually liable for their participation antitrust violations. In fact, the case Defendants cited for their proposition that officers are not liable for antitrust merely

because of their positions as officers, further states "[t]o be liable and individual must either himself participate or must authorize another to act or must with knowledge of the responsibility acquiesce in the act of another with which he is affiliated as an officer or in a like relationship." *See Cape Cod Food Prod. v. Nat'l Cranberry Ass'n*, 119 F. Supp. 900, 919 (D. Mass. 1954). Other cases in this Court hold the same. *See Substantial Investments, Inc. v. D'Angelo Franchising Corp.*, No. Civ. A. 03–11202–RWZ, 2004-2 Trade Cas. (CCH) ¶ 74543, 2004 WL 1932749, *4 (D. Mass. Aug. 30, 2004) (explaining that defendant's CEO could be personally liable because he executed the allegedly unlawful agreement); *FTC v. Direct Marketing Concepts, Inc.*, 596 F. Supp. 2d 285, 310-11(D. Mass. 2008) (corporate officers to be held liable must have participated in acts or had authority to control them). In fact, cases that have confronted this issue across the country are nearly uniform in holding that corporate officers and directors can be individually liable for violations of the Antitrust and unfair competition laws.[6]

---

[6]      *See, e.g., U.S. v. Wise*, 370 U.S. 405, 416 (1962) (criminal antitrust case) (explaining that a corporate officer is personally liable for antitrust violations where he or she "knowingly participates in effecting the illegal … conspiracy—be he the one who authorizes, orders, or helps perpetrate the [violation]—regardless of whether he is acting in a representative capacity"); *Continental Orthopedic Appliances, Inc. v. Health Ins. Plan of Greater New York*, 994 F. Supp. 133 (E.D. N.Y. 1998) ("[i]ndividual officers of corporations may be held liable under section 1 … for conspiracies … where those conspiracies … are with persons other than the corporation for whom they serve as officers."); *Vandervelde v. Put & Call Brokers & Dealers Ass'n*, 344 F. Supp. 118 (S.D. N.Y. 1972), *opinion supplemented*, 344 F. Supp. 157, 21 A.L.R. Fed. 741 (S.D. N.Y. 1972) (explaining that while "[m]ere membership in an Association is insufficient to justify a finding of liability," under the member-ratification theory, "where a member knows or should know that the Association … is engaged in an unlawful enterprise and he continues his membership without protest, he may be found to have ratified the organization's action and become unable subsequently to disassociate himself from responsibility for its results"); *Murray v. Nat. Football League*, 1996-2 Trade Cas. (CCH) ¶ 71479, 1996 WL 363911 (E.D. Pa. 1996) (holding that the NFL commissioner could be individually liable if he participated in, ratified, or enforced league policies violating the antitrust laws); *Higbie v. Kopy-Kat, Inc*., 391 F. Supp. 808 (E.D. Pa. 1975) (explaining that it is "well established that a corporate officer or director can be held personally liable for damages arising out of an antitrust violation where he participated in the unlawful acts, or where he has acquiesced or ratified the actions of other officers or agents of the corporation which were in violation of the antitrust laws"); *Georgandellis v. Holzer Clinic, Inc*., 2009-1 Trade Cas. (CCH) ¶ 76651, 2009 WL 1585772 (S.D. Ohio 2009) (explaining that it is well-established that corporate officers and agents may be personally liable when they participate in or authorize corporate activities that violate the antitrust laws); *In re Southeastern Milk Antitrust Litigation*, 555 F. Supp. 2d 934, 949 (E.D. Tenn. 2008) ("[t]he Sixth Circuit has unequivocally held that corporate 'officers and agents may be held individually liable for corporate actions that violate the antitrust laws if they authorize or participate in the unlawful acts.' … Individual liability may be imposed 'only where corporate agents are actively and knowingly engaged in a scheme designed to achieve anticompetitive ends' and that an individual defendant 'exerted his influence so as to shape corporate intentions.'"); *First Med Representatives, LLC. v. Futura Medical Corp*., 195 F. Supp. 2d 917, 929 (E.D. Mich. 2002) (explaining that "there is no bar to individual civil liability for antitrust violations, even

MJ's Market does not claim that Carr, Brady and Lundberg are liable simply by virtue of being officers of one of the co-conspirator companies in the unlawful scheme in this case. The facts are that Carr, Brady and Lundberg are individually identified in the M&A Agreement, each has obligations thereunder, and they each signed the agreement. *See* Complaint at Ex. A. These three signed the M&A Agreement and individually are parties to that agreement themselves, which expressly states that they give their express consent an approval and agree to perform the obligations of the Agreement, they agree to take further actions as necessary to carry out and consummate the Agreement, which is binding on them as signatories, and states further that specific performance may be enforced against them under the Agreement.  These facts alone are sufficient to demonstrate that these three may be individually liable in this case. *See Substantial Investments, Inc.*, 2004 WL 1932749, *4 (CEO who signed agreement was liable); *see also Direct Marketing Concepts, Inc.*, 596 F. Supp. 2d at 311 (reasoning individuals who were "driving force"

---

by an employee/officer of a corporation, acting on behalf of the corporation" and noting that individual liability can be imposed where corporate agents are actively and knowingly involved in schemes to achieve anticompetitive ends; but to support liability, the evidence must show that a defendant exerted his or her influence to shape corporate intentions); *Reifert v. South Central Wisconsin MLS Corp.*, 368 F. Supp. 2d 912 (W.D. Wis. 2005) (holding that a corporate officer is liable for the antitrust violation if he or she knowingly participates in effecting it, whether or not he or she is acting in a representative capacity, and that affirmation of an existing unlawful corporate policy is sufficient to sustain liability of individual directors); *MCM Partners, Inc. v. Andrews-Bartlett & Associates, Inc.*, 62 F.3d 967 (7th Cir. 1995); *Amarel v. Connell*, 102 F.3d 1494, 45 Fed. R. Evid. Serv. 1390, 36 Fed. R. Serv. 3d 1 (9th Cir. 1996), as amended, (Jan. 15, 1997) ("[w]here a plaintiff seeks to impose antitrust liability on an attorney, that plaintiff must establish that the attorney 'exerted [his or her] influence over [a client] so as to direct [the client] to engage in the complained of acts for an anticompetitive purpose.'"); *U.S. v. Brown*, 936 F.2d 1042, 33 Fed. R. Evid. Serv. 1165 (9th Cir. 1991) (criminal antitrust case) (explaining that an officer's mere knowledge of unlawful conduct is insufficient for liability, but liability can be assessed if the officer authorized the unlawful conduct); *Tillamook Cheese & Dairy Ass'n v. Tillamook County Creamery Ass'n*, 358 F.2d 115 (9th Cir. 1966) (explaining that "individuals through whom a corporation acts and who shape its intentions" can be held liable for attempted monopolization); *F.T.C. v. RCA Credit Services, LLC*, 727 F. Supp. 2d 1320 (M.D. Fla. 2010) ("[i]ndividuals may be held personally liable for corporate FTC violations if the FTC shows that the individuals (1) participated directly in the deceptive acts or practices or (2) had authority to control them and had knowledge of the practices …. Authority to control a company's practices 'may be demonstrated by active participation in the corporate affairs, including assuming duties as a corporate officer.'"); *Longleaf Mitigation Development Co., LLC v. Florida Mitigation Providers, LLC*, 519 F. Supp. 2d 1233, 1235 (M.D. Fla. 2007) ("[o]ne who causes another to violate the antitrust laws can be liable for the violation," and the same is true where defendant "actively participated in the policy decision to commit the violation"; also noting that a defendant is liable if it "directly engaged in wrongdoing").

or had "actual knowledge" of misleading claims could be individually liable). MJ's Market is confident that discovery will further elucidate other actions these three individuals undertook in furtherance of the conspiracy and agreement to violate the antitrust and unfair competition laws.

## CONCLUSION

For the foregoing reasons, and for the reasons stated in MJ's Market's Opposition to the Jushi Defendants' Motion to Dismiss, filed simultaneously herewith, MJ's Market respectfully requests that this Court deny the Motion in its entirety.

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of September, 2023, in accordance with D. Mass. Local R. 5.2(b), the foregoing document filed through the ECF system, will be sent electronically to the registered participants on the Notice of Electronic Filing and physical copies will be sent to any non-registered participants.

/s/Michael J. Duffy
Michael J. Duffy